LORING N. FARNUM *vs.* HAVERHILL AND ANDOVER STREET
RAILWAY COMPANY.

Suffolk.   January 25, 1901. — March 2, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

The statutes of this Commonwealth permit the construction of street railways in part through private lands with the consent of the owners or when the lands are acquired by purchase, if all other requirements are complied with.

BILL IN EQUITY by a stockholder of the defendant to restrain it from constructing tracks outside the limits of the highways of the Commonwealth, filed November 1, 1900.

The case was heard in the Superior Court, by *Fessenden,* J., who reserved it on the bill and answer and agreed facts for the

consideration of the full court, such decree to be entered as justice and equity might require.

The agreed facts were as follows: "First. It is agreed that Loring N. Farnum, of Boston, county of Suffolk and Commonwealth of Massachusetts, was a subscriber for ten shares of the capital stock of the Haverhill and Andover Street Railway Company, and that the Haverhill and Andover Street Railway Company is a corporation duly organized under the laws of the Commonwealth of Massachusetts, by charter dated October 23, A. D. 1900. And that the said corporation has a location or franchise to lay its tracks in certain streets or highways of the towns of Andover and North Andover, both in the county of Essex, Commonwealth aforesaid, and that the said locations have been duly accepted by the said Haverhill and Andover Street Railway Company.

"Second. It is agreed that the Haverhill and Andover Street Railway Company through its proper officers contemplate building, and have taken preliminary measures to build, a certain section of track outside the limits of the highways of the Commonwealth of Massachusetts, to wit: that beginning at a point on the northwesterly side of Elm street in the town of Andover, at or about the house of Plato Eames so called, and running in a northwesterly direction over the land of private individuals for a certain great distance, to wit, about one half mile to a road or street in Andover known as the old railroad track, and being a continuation of High Street, so called, in Andover aforesaid.

"Third. It is agreed that the Haverhill and Andover Street Railway Company, through its proper officials, intend to purchase from private individuals, and have taken preliminary steps to accomplish such purchase with the funds of the corporation, the fee simple in lands over which the tracks of the Haverhill and Andover Street Railway Company are to be laid outside of the limits of the highways of the said town of Andover as above set forth.

"Fourth. It is agreed that the Haverhill and Andover Street Railway Company is duly and lawfully organized under the general street railway law of the Commonwealth of Massachusetts, and has no grant from the Legislature of the Commonwealth of

Massachusetts authorizing it to operate its road or tracks outside the limits of the highways of this Commonwealth."

*W. Odlin*, for the plaintiff.

*E. B. Fuller*, for the defendant.

KNOWLTON, J.    The only question in this case is whether a street railway company, organized under the general laws of this Commonwealth, can build its tracks and run its cars over land acquired by purchase outside of the limits of the streets or highways.   This question is not directly answered by the statutes, and it never has been considered by this court.

The definitions of the words " street railway " given by the St. 1874, c. 372, § 2, and the Pub. Sts. c. 112, § 1, throw no light on the question. ' The definition in the St. 1898, c. 578, § 1, which is given for the construction of that act, mentions only railways " constructed on, in, under or above the public highways or streets " ; but it is obvious that it was not intended to exclude railways constructed in part over private lands, for the statute contains many provisions in regard to taxation and other matters which plainly are applicable to street railways generally, as well those running in part over private lands as others. In various places it requires returns of the length of track operated in public ways, thus recognizing the possibility of there being tracks operated in places which are not public ways. At the time of the passage of this act there were many street railways in the Commonwealth that operated such tracks under express legislative authority contained in their charters or in other special statutes.

There is nothing in the policy of the Commonwealth against the operation of street railways in part across private lands acquired by purchase.   This is shown in the large number of charters or other statutes expressly permitting it, to which we have referred.   Moreover, a street railway may " purchase and hold such real and personal estate as may be necessary or convenient for the operation of its road."   Pub. Sts. c. 113, § 18. The statute expressly prohibiting the laying of a street railway in a public park implies that, except when prohibited, a street railway may be laid outside of public ways.   Pub. Sts. c. 54, § 13.   St. 1882, c. 154, § 10.

Under the St. 1898, c. 404, a right is given to street railways

to take lands outside of public ways in the exercise of the right of eminent domain, for the purpose of avoiding or eliminating a crossing of a railroad by its railway at grade.   Section 5 of this statute is a general provision making street railway companies subject to the provisions of general laws as to the equipment, use and operation of their railways in parts outside of the limits of public ways, as well as in such ways.   In view of the existence of many railways having locations in part outside of public ways, we are of opinion that the application of this section was intended to be general, and not to be limited to locations made under this statute.

Undoubtedly street railways under our statutes are intended to be located and used in the public streets, and they cannot be operated without a location approved by the local authorities. A location through the public streets, connected in any place with a track running through private lands, will not be likely to be approved by the authorities, unless the general arrangement of the course is such as the public convenience requires.

We are of opinion that the statutes permit the construction of street railways in part through private lands with the consent of the owners, or when the lands are acquired by purchase, if all other requirements are complied with.   Such was the opinion of the railroad commissioners expressed in *Wareham* v. *Onset Bay Grove Association*, R. R. Com. Rep. January, 1887, 112, 114.   A similar statute has been so construed in Pennsylvania. *Pennsylvania Railroad* v. *Glenwood & Dravosburg Electric Street Railway*, 184 Penn. St. 227.   *Pennsylvania Railroad* v. *Greensburg, Jeannette & Pittsburg Street Railway*, 176 Penn. St. 559. *Rahn Township* v. *Tamaqua & Lansford Street Railway*, 167 Penn. St. 84.

*Bill dismissed.*