ARTHUR L. HEWETT, trustee, *vs.* INHABITANTS OF CANTON.

Norfolk.    January 8, 1902. — October 31, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Municipal Corporations. Street Railway.*

The selectmen of a town in granting a location to a street railway company do not act for the town but as public officers exercising a quasi judicial authority, and if the construction of a street railway under such a grant of location by filling

up a gutter and raising the grade of the street causes surface water to flow upon the land of an abutter to its injury, the landowner has no remedy against the town. If he has any cause of action it is against the railway company under St. 1898, c. 578, § 11.

A town is not liable for an injury caused by surface water accumulating on a street and flowing upon the adjoining land.

TORT for damages caused by water overflowing from a gutter which it was alleged the defendant allowed to be obstructed in the construction of the railway of the Blue Hill Street Railway Company under a location granted by the selectmen of the defendant. Writ dated April 6, 1900.

The defendant demurred to the declaration.

In the Superior Court the demurrer was overruled by *Hardy,* J., and the defendant appealed. Thereafter the case was tried before *Sherman,* J., and the jury returned a verdict for the plaintiff in the sum of $200. At the request of the defendant the judge reported the case for determination by this court upon the terms stated by the court.

The case was argued at the bar in January, 1902, and afterwards was submitted on briefs to all the justices.

*T. E. Grover,* for the defendant.

*H. F. Buswell,* for the plaintiff.

LATHROP, J. The plaintiff's land is situated on the corner of Washington Street and Sherman Street in Canton. On the westerly side of Washington Street, and running past the plaintiff's land, there was, and had been for many years before November 16, 1899, a wide, open, and concreted gutter. This was shallow enough to allow all vehicles going from Washington Street into Sherman Street to pass over it. It was intended to carry off surface water, and ordinarily was sufficient for that purpose; it was lower than the general surface of the street, but substantially followed its grade line.

The Blue Hill Street Railway Company was granted an original location, by the selectmen of Canton, to construct, and under that location did construct, a single track railway on Washington Street, with a branch track turning from that street into Sherman Street, and running on that street. Where the gutter on the west side of Washington Street crossed Sherman Street, the railway company filled it up; and there was evidence tending to show that this filling up of the gutter stopped the surface

water from flowing therein, and turned it back upon the plaintiff's land.

The construction of the railway on the north side of Sherman Street, opposite the plaintiff's land, was by laying sleepers on the surface of the highway and grading up to them, so as to form an embankment six to eight inches higher than the level of the street, and sloping from the track across the south side of the street. This embankment was in some places a foot higher than the level of the sidewalk, and the construction left a depression between the embankment and sidewalk, into which the water, when diverted from the Washington Street gutter, flowed, and thence over the sidewalk upon the plaintiff's land.

On December 14, 1899, the railway company, at a point in front of the plaintiff's house on Washington Street, outside its location and within the location of Washington Street, put in a catch basin five feet deep, four feet four inches square at the bottom, and tapering towards the top where the opening was nineteen or twenty inches square. This catch basin was covered by a grating consisting of seven bars. From the catch basin the railway company put in a twelve inch drain pipe, which was carried one hundred and thirty-seven feet southerly on Washington Street with a fall of seven inches in its entire length, crossing Sherman Street in the line of the old gutter, under the railway track. There was evidence that the catch basin and drain pipe were inadequate for the purpose for which they were intended, and that they were more or less choked, and sometimes filled, with sand and debris.

The railway was constructed according to the location given by the selectmen, but one of the defendant's selectmen and the contractor who built the road testified that no grade lines were furnished to the road by the selectmen before construction. The railway itself was properly constructed, unless the filling up of the gutter and the making of the embankment, as before stated, was improper construction.

The only damage to the plaintiff was that caused by the overflow of surface water, and, so far as appeared, was in the year 1900.

The defendant requested the following rulings:

"1. If the damage to the plaintiff's land was caused by the

flow of surface water and the jury find there is no system of drainage in the town of Canton, then the plaintiff cannot recover.

" 2. Upon all the evidence, the plaintiff cannot recover.

" 3. That the construction of a wide gutter along Washington Street and Sherman Street to carry off the surface water that may come into said streets from adjoining land and streets does not constitute a system of sewers or drainage.

" 4. If the street railway was duly established by law with a rightful location, and a right to operate as a street railway in the highways of said town, the fact that the railway so constructed caused surface water to flow back upon and into the plaintiff's land would not make the defendant liable for such injury.

" 5. If the location of the railway was duly authorized, and it was operated and maintained in a proper condition, then it was lawfully in the highway, and the town would have no right to remove it, and cannot be held liable for damage caused to the plaintiff's land by turning upon it the surface water from the street."

The judge gave the first ruling requested, and declined to give the others in form or substance. The jury returned a verdict for the plaintiff; and the judge reported the case for the determination of this court. If any of the rulings requested and not given should have been given, judgment is to be entered for the defendant or a new trial ordered as justice may require; otherwise, judgment to be entered on the verdict.

The report does not state the date of the granting of the location to the railway company, though it is stated that: " The operation of the line on Sherman Street began November 14, 1899." We assume that the location was granted under the St. of 1898, c. 578, § 13. Much of the argument of the plaintiff seems to proceed upon the theory that the town is bound by the acts of the selectmen, and that the act of the selectmen amounted to a granting of a franchise by the town. But it is well settled that the selectmen in granting a location do not act for the town, but as public officers exercising a quasi judicial authority. *Vinal* v. *Dorchester*, 7 Gray, 421, 422. *Young* v. *Yarmouth*, 9 Gray, 386, 389. *Cambridge* v. *Cambridge Railroad*, 10 Allen, 50.

*Union Railway* v. *Mayor & Aldermen of Cambridge*, 11 Allen, 287, 292. *Washburn* v. *Easton*, 172 Mass. 525. *Underwood* v. *Worcester*, 177 Mass. 173.

If the grade of a street is raised in front of a man's land by a street railway company in the construction of its premises, a petition for damages will not lie against the town, under the Pub. Sts. c. 52, §§ 15, 16. *Vigeant* v. *Marlborough*, 175 Mass. 459. *Underwood* v. *Worcester*, 177 Mass. 173. Nor will an action of tort lie. *Purinton* v. *Somerset*, 174 Mass. 556.

Another ground upon which it is sought to charge the defendant is that applicable to a town or city which has a system of sewers. In such a case a city or town is not liable for a defect in the plan or system of drainage adopted, but is liable for an injury caused by negligence either in the original construction of a sewer or in not keeping it free from obstructions. *Bates* v. *Westborough*, 151 Mass. 174. *O'Brien* v. *Worcester*, 172 Mass. 348. But this rule has no application to the case of surface water accumulating on the street and flowing into the land of an adjoining owner. *Flagg* v. *Worcester*, 13 Gray, 601. And this has been held even where the surface water backs up from a sewer into the cellar of a house, caused by the failure of the city to keep the sewer free from obstruction, there being no drain from the cellar to the sewer. *Barry* v. *Lowell*, 8 Allen, 127. *Collins* v. *Waltham*, 151 Mass. 196. See also *Turner* v. *Dartmouth*, 13 Allen, 291; *Kennison* v. *Beverly*, 146 Mass. 467; *Woodbury* v. *Beverly*, 153 Mass. 245, 247.

If the plaintiff has any cause of action it is against the railway company under the St. of 1898, c. 578, § 11; but this question we do not decide.

The demurrer to the declaration has not been argued, and we treat it as waived. A majority of the court is of opinion, however, that upon the facts of the case, the rulings requested should have been given, and that the defendant is entitled to judgment.

*So ordered.*