EDITH H. EUSTIS *vs.* MILTON STREET RAILWAY COMPANY.
AMOR L. HOLLINGSWORTH *vs.* SAME.
JOSEPH C. WHITNEY *vs.* SAME.
GEORGE C. KENNEDY *vs.* SAME.

Norfolk.    May 22, 1903. — June 18, 1903.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Constitutional Law.    Way.*

St. 1895, c. 121, authorizing the selectmen of the town of Milton to lay-out and the town to accept and allow special space for the use of street railways in any town way or highway theretofore or thereafter laid out within that town, does not impose an additional easement on land previously taken for streets and highways, and is constitutional.

FOUR BILLS IN EQUITY, filed April 2, 1903, by the owners of certain land abutting on the westerly side of Blue Hill Avenue in Milton, owning the fee to the centre of that avenue, to enjoin the defendant from laying its track and operating its road within a reserved space laid out by the town under St. 1895, c. 121, along the westerly side of the avenue.

The cases were heard by *Braley*, J., who ordered that a decree be entered in each case dismissing the bill, and at the request of the plaintiffs reported the cases for determination by the full court, such decree to be entered as law and justice might require.

*M. Storey, J. L. Thorndike & E. R. Thayer*, for the plaintiffs.
*W. A. Gaston, F. E. Snow & R. M. Saltonstall*, for the defendant.

KNOWLTON, C. J.    The plaintiffs in these suits in equity seek to obtain an injunction against the defendant to prevent the

construction of an electric street railway through Blue Hill Avenue in Milton. The plaintiffs are severally abutters upon the avenue and owners of the fee to the centre of the street. The defendant is acting under an order of the selectmen of Milton which established a location of the railway through the street. No question is made of the regularity of the proceedings before the selectmen, except that they were founded upon the authority of a previous order laying out and reserving a special space for the use of street railways, under and in accordance with the provisions of the St. 1895, c. 121, and upon the action of the town accepting this order. It is contended by the plaintiffs that this statute is unconstitutional because it purports to authorize the imposition of an additional servitude upon the land previously taken for streets and highways in Milton, without providing for compensation to the owners.

This statute forbids the granting of any location for the track of any street railway in Milton except in ways in which special space for the use of street railways shall have been reserved prior to such location of tracks, and except within the limits of such reserved space. It further authorizes the selectmen of the town to lay out and the town to accept and allow such space for the use of street railways in any town way or highway heretofore or hereafter laid out within the town.

The St. 1894, c. 324 (R. L. c. 48, § 85) gives authority to the public officers who lay out streets, town ways or highways in the cities or towns which accept the act, to reserve special space for the use of persons riding on horseback, special space for the use of street railways, special space for drains and sewers and electric wires, and special space for trees, grass and for planting. Under this last statute damages are of course to be awarded according to the extent and nature of the way laid out, and the question in regard to constitutionality does not arise.

The question whether a particular use of a highway is authorized by the original appropriation of the property is often difficult to answer. In *New England Telephone & Telegraph Co.* v. *Boston Terminal Co.* 182 Mass. 397, 399, the rights of the public are defined as follows: "This easement is held to include every kind of travel and communication for the movement or transportation of persons or property which is reasonable and proper in the use of

a public street. It includes the use of all kinds of vehicles which can be introduced with a reasonable regard for the safety and convenience of the public, and every reasonable means of transportation, transmission and movement beneath the surface of the ground as well as upon or above it. Accordingly it has been held that the public easement which is paid for in assessing damages to the owner includes the use of the street for horse cars and electric cars, for wires of telegraph, telephone and electric lighting companies, and for water pipes, gas pipes, sewers and such other similar arrangements for communication or transportation as further invention may make desirable. *Pierce* v. *Drew*, 136 Mass. 75. *Suburban Light & Power Co.* v. *Aldermen of Boston*, 153 Mass. 200. *Attorney General* v. *Metropolitan Railroad*, 125 Mass. 515. *Howe* v. *West End Street Railway*, 167 Mass. 46. *Natick Gas Light Co.* v. *Natick*, 175 Mass. 246." See also *White* v. *Blanchard Brothers Granite Co*. 178 Mass. 363, 366. In determining whether an additional servitude is imposed by the authorization of a new kind of use, the question is not whether the Legislature or the public authorities foresaw and contemplated the particular use in question; but whether it is fairly included in the purposes for which the property was originally taken by the public. Whenever a road is laid out, the officers who represent the public and the persons whose property is taken must be supposed to know that new modes of travel and new occasions for transporting peculiar kinds of property will be likely to come into existence. The primitive modes of locomotion along highways have largely given place to new vehicles for horses, and to electric cars, bicycles and automobiles. The question as to each one of these is whether, with reasonable regulations, the method of travel is a reasonable and proper use of the highway, having reference to other proper uses of it which the public may have occasion to make. Some of these new modes of travel are so fraught with danger to others having rights in the way that they need to be carefully regulated for the protection of the public. In the absence of provisions for their regulation, some of them would doubtless be deemed unreasonable and improper, as too great an interference with the convenience and safety of persons using the streets in other modes.

In this Commonwealth the rights of the public in regard to new methods in the use of highways for travel and transportation, have received liberal recognition by the Legislature and the courts, as is shown by the cases above cited.  In the present case there is no feature which has not been covered by previous decisions, except the authorization by statute of the reservation of special space for electric railways.  Of the right of the Legislature, or of designated public officers, to regulate the use of streets by travellers in any reasonable way, there can be no doubt.  From the earliest times it has been the custom to appropriate a part of each highway for travel with teams, and to leave other parts for public use in other ways.  Sidewalks are constructed for the special use of pedestrians, and under recent statutes bicycle paths may be laid out.  R. L. c. 48, §§ 85–87. These are only reasonable regulations of the rights of the public.  *New England Telephone & Telegraph Co.* v. *Boston Terminal Co., ubi supra.*

It is contended that the reservation of this space for electric railways near the side of the way, which is permitted by the statute, will put an unreasonable and additional servitude upon the plaintiff's property.  This contention may be considered in two aspects: first, in reference to the effect upon public travel, and secondly, in reference to the effect upon the plaintiff's right of access to the way.  As to the first, we are of opinion that the reservation of this space for a public use, does not necessarily or probably make the use of the street for travel by electric cars less safe and convenient for persons using the street for other modes of travel than if the tracks were in the part of the way constantly used by ordinary vehicles.  Indeed, there is nothing to show that this is not a wise and proper arrangement for those who use the streets of Milton.  In this aspect of the case the regulation objected to puts no greater burden upon the land taken for streets than the laying of tracks in the part wrought for travel by horses and carriages.

There is nothing in the statute that implies an intention to interfere with the right of abutters to have reasonably convenient access to the street.  The statute must be construed as preserving the landowners' freedom from any unreasonable interruption of this right of access.  The construction of a sidewalk and

gutter interferes somewhat with communication between abutting property and the centre of a street; but no one would contend that for this reason the construction of a sidewalk, with suitable driveways across it, is an imposition of an additional servitude upon the land taken for public use.

In the present case the rails are to be laid upon ties whose upper surface is not above the level of the ground, and the land adjacent to the tracks is to be smoothly graded on a level with the tracks. We see nothing to indicate that the construction of the tracks will involve any peril to travellers on the way, except that which is necessarily incident to a use of the street by electric cars, and we find nothing in the statute which justifies an unreasonable interference with the plaintiffs' right to have access to the street in proper places.

The law applicable to this class of cases has been considered at length in *Attorney General* v. *Metropolitan Railroad,* 125 Mass. 515, *Howe* v. *West End Street Railway,* 167 Mass. 46, and *White* v. *Blanchard Brothers Granite Co.* 178 Mass. 363. Although in some States the laws have been construed more strictly against street railways, we are of opinion that there is nothing in this case which should take it out of the rules laid down in the decisions above cited.

*Bills dismissed.*