ANGELINE E. HYDE *vs.* BOSTON AND WORCESTER STREET
RAILWAY COMPANY & others.

Worcester.    October 3, 1906. — February 26, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Street Railway.    Way.    Eminent Domain.    Boston and Worcester Street Rail-
way Company.    Statute.    Constitutional Law.*

The owner of land abutting on a public way, which is injured by reason of a
    change of grade of the way made in the construction of the railway of a street
    railway company in accordance with its grant of location from the selectmen of
    a town, has no remedy in tort against the street railway company or the con-
    tractor employed by it to do the work of construction.  Whether, in case the
    abutting land is cut off by the change of grade from all proper access to the
    highway so as to be rendered incapable of reasonable improvement, the land-
    owner may not be entitled to relief in a proper form of remedy seasonably
    sought, *quaere.*
Under St. 1901, c. 455, and the general law relating to street railways, the select-
    men of a town on the line of the Boston and Worcester Street Railway Com-
    pany had power to grant a location to that company authorizing it to cross with
    its railway a public way substantially at right angles and imposing a condition
    that the company should carry its tracks under the public way and for this
    purpose should raise the way not exceeding seven feet at the highest place.
The provisions of St. 1901, c. 455, and of the general law relating to street rail-
    ways giving power to the selectmen of a town on the line of the Boston and
    Worcester Street Railway Company to grant a location to that company to
    cross with its railway a public highway substantially at right angles and to
    impose a condition that the company should carry its tracks under the high-
    way and for this purpose should raise the highway not exceeding seven feet
    at the highest place, without providing that the railway company should make
    any compensation to the owners of abutting lands for injuries sustained by
    them from the construction of the railway in accordance with the grant of
    location, are constitutional, the original taking of land for the highway for the
    purposes of public travel, for which compensation is provided, having included
    the use of the highway for public travel by all reasonable devices.

TORT for trespass upon the plaintiff's premises.   Writ dated
January 28, 1904.

Originally the action was brought against the Boston and
Worcester Street Railway Company alone.   Later, upon motion
of the plaintiff, James F. Shaw and Edward P. Shaw, doing
business as James F. Shaw and Company, and Ransom Rowe
and Bonfiglis Perini, doing business as Rowe and Perini, were
joined as parties defendant.

In the Superior Court the case was tried before *Gaskill*, J. The plaintiff was the owner of a farm situated upon both sides of Center Road, which is. a public way in the town of Southborough.   The Boston and Worcester Street Railway Company is a corporation authorized under general law and by St. 1901, c. 455, to construct and operate a street railway from Boston to Worcester.   On August 19, 1902, a grant of location in accordance with R. L. c. 112 was made to the defendant company by the selectmen of Southborough which on March 26, 1903, was approved by the board of railroad commissioners.

This location authorized the defendant company to construct its tracks substantially at right angles across Center Road. Among the conditions imposed in the location upon the defendant company was one requiring it to construct its tracks beneath the surface of Center Road, and for this purpose to raise the highway at the point of crossing not more than seven feet, to carry the highway over the tracks by a bridge resting upon suitable masonry abutments and to provide for the approach of the highway to such bridge by suitable grading.   All work in connection with these changes was to be done by the defendant company, and it was to indemnify the town of Southborough for all expense it might be occasioned, either by land damages or otherwise, from the performance of these requirements.   Plans were prepared for this work in accordance with the location and were approved by the selectmen of Southborough.   An inspector appointed by the selectmen watched the construction until it was completed to their satisfaction.   No order was made by the selectmen or road commissioners as to changing the grade of the road other than the condition contained in the location.   The construction of the street railway and the changes in the way in front of the plaintiff's premises all were done as required by the location.   The work required by the location raised the grade of Center Road in front of the plaintiff's premises from nothing at one end to seven feet at the other, its highest point, and damaged certain fruit trees and changed the course of surface water to the harm of the plaintiff.   No notice in writing stating the time, place and cause of the damage ever was given by the plaintiff to any of the defendants.

It was agreed that the damage to the land of the plaintiff by the raising of the grade of Center Road under the order of location was $300, that the damage to the plaintiff's land by trespass of workmen of Rowe and Perini while working upon the construction of the street railway and on Center Road was $100, and that the damage to the plaintiff's land by the flow of surface water from the public way was $50.

Upon these facts the judge ruled that the defendant company and the defendants Shaw could not be held liable. He also ruled that the defendants Rowe and Perini could be held liable only for the trespass committed by their employees upon the plaintiff's premises.

With the consent of the parties the judge ordered the jury to find for the defendant company and for the defendants Shaw, and against the defendants Rowe and Perini for the sum of $100, and reported the case and his rulings to this court. If the rulings were right judgment was to be entered upon the verdict of $100 against Rowe and Perini and upon the verdicts in favor of the other defendants. If the rulings were not right in whole or in part the verdicts in whole or in part were to be set aside and judgment was to be entered as this court might direct.

*F. W. Knowlton,* for the plaintiff.

*G. Murchie,* for the defendants.

RUGG, J. This case must be decided in the light of several recent decisions respecting the liability of street railway companies and municipalities for the construction of street railways in accordance with locations duly granted. *Purinton* v. *Somerset,* 174 Mass. 556, was an action of tort against a town for damages sustained by the plaintiff by reason of the lowering of a public highway, upon which his land abutted, by a street railway company acting under the authority of a location granted by the selectmen. The defendant was held not liable. *Vigeant* v. *Marlborough,* 175 Mass. 459, and *Underwood* v. *Worcester,* 177 Mass. 173, were petitions under Pub. Sts. c. 52, §§ 15 and 16 (R. L. c. 51, §§ 15 and 16), for the assessment of damages occasioned, in the first case by the raising, and in the second by the lowering, of a street in front of the petitioner's premises by a street railway company acting in accordance with restrictions contained

in locations.   In both cases the petitioner was precluded from recovery on the general ground that the grant of location was made by public officers, who were not acting as agents of the municipality, and that the restrictions were reasonable.   *Hewett* v. *Canton*, 182 Mass. 220, was an action of tort for damages caused by the overflow of water, growing out of obstructions in a gutter occasioned by the construction of a street railway under a legally granted location.   In *Laroe* v. *Northampton Street Railway*, 189 Mass. 254, the plaintiff sought by an action of tort to recover damages for the building of an embankment upon the highway in front of his premises, and the turning of surface water upon his property by a street railway company acting under a lawful location.   In the two latter cases, one being against the municipality and the other against the street railway, judgment was for the defendant, for the reason that the primary and direct purpose of these changes in the grade of the highway was the construction of the street railway.   If the highway is improved or harmed for the purposes of the public travel by such changes, this result is subsidiary and incidental.   It comes about through the action of public authorities over whom, in respect of their public duties, the municipality in its corporate capacity can exercise no control.   *Flood* v. *Leahy*, 183 Mass. 232.

Since 1823 it has been the law of this Commonwealth that no action of tort can be maintained for the changing of the grade, or raising or lowering the surface, of a highway by one authorized by law to do so.   *Callender* v. *Marsh*, 1 Pick. 418.   This case has been many times cited with approval and the principle it illustrates has been often applied.   Inasmuch as the changes of grade in highways occasioned by the lawful construction of street railways are not made by those charged with the duty of keeping highways in repair, the statutes passed with the apparent intention of remedying the injustice wrought by the highway statutes as revealed in the decision of *Callender* v. *Marsh*, *supra*, (Rev. Sts. c. 25, § 6, St. 1842, c. 86, § 2, R. L. c. 48, § 27, c. 51, §§ 15, 16,) afford no relief.   At the time these statutes were enacted, the modern public service corporation, entering upon highways and altering their aspect in such material respects as the erection of poles and wires, the mutilation of shade trees, and the changing of the grade, under the authority

of public officers and uncontrolled by the municipalities, had not come into existence. In the earlier statutes authorizing the transmission of intelligence by electricity, provision for damages to abutting landowners was made, and when, through a decision of this court, a defect in the relief thus afforded was pointed out, (*Pierce* v. *Drew*, 136 Mass. 75,) the evil was remedied by a new statute at the next session of the General Court. Additional enactments have been passed so that now the abutting landowner is afforded ample remedy for any damages he may sustain through constructions in the highway by telegraph, telephone, electric light, heating and power companies. St. 1849, c. 93, § 4. St. 1884, c. 306. St. 1895, c. 350. R. L. c. 122, §§ 3–5. An examination of the recent as well as earlier statutes governing the construction of street railways shows that the Legislature has not yet imposed a like liability upon street railways, notwithstanding the numerous recent decisions of this court, in which remediless injury to abutters has been pointed out. See in addition to cases above cited, *McDermott* v. *Warren, Brookfield, & Spencer Street Railway*, 172 Mass. 197; *Howe* v. *West End Street Railway*, 167 Mass. 46; *Williams* v. *Old Colony Street Railway*, 193 Mass. 305. St. 1894, c. 548, authorizing the construction of the Boston Elevated Railway, however, contained ample provision as to damages to abutters. *Baker* v. *Boston Elevated Railway*, 183 Mass. 178.

It only remains to inquire whether the condition in the location granted by the selectmen of Southborough to the defendant company, which required it to carry the highway over its tracks by a bridge, with the consequent change in grade, was legal. This location differs from that in the cases cited, in that it contemplates the crossing of the highway by the street railway at right angles, instead of a longitudinal construction within the way. The Legislature by St. 1901, c. 455, authorized the defendant company in effect so to construct its railway between Boston and Worcester, that its tracks might lie largely outside the limits of public ways. It is probable that this statute did not extend the rights possessed by street railway companies organized under the general law to construct their tracks upon private lands. Whether this statute was anything more than a declaration of the general power possessed by street railway companies or not, its effect was undoubtedly to remove whatever doubt

had theretofore existed as to the right of local authorities to grant locations to this street railway company to cross public ways substantially at right angles.  If, however, the sole right of the defendant company to accept the location with its conditions granted it in Southborough rested upon this special statute, a different conclusion perhaps might be reached as to the plaintiff's rights.  We assume upon the authority of *Farnum* v. *Haverhill & Andover Street Railway*, 178 Mass. 300, that the selectmen of Southborough were authorized to grant the defendant company a location to cross Center Road substantially at right angles, apart from St. 1901, c. 455.  A corollary of this proposition is that the defendant company was empowered to operate its street railway by the use of passenger cars, which in size and speed might rival those of steam railroads.  The crossing of public ways at grade by cars of this character driven at high rates of speed inevitably adds to the danger of life and limb of travellers upon the street railway as well as upon the highway.  It had become the settled policy of the Commonwealth long before the granting of the location in question to abolish crossings at grade of steam railroads and highways.  St. 1890, c. 428.  St. 1906, c. 463, Part I, §§ 29 to 45.  By c. 440, St. 1902, (St. 1906, c. 463, Part I, §§ 29, 34, 35,) which was enacted previous to the work complained of by the present plaintiff, street railway companies having locations in highways affected by the abolitions of grade crossings of highways with steam railroads, were made proper parties to the proceedings for abolition, and might be compelled to pay a part of the expense. In view of this policy of the Commonwealth, in pursuance of which millions of dollars have been paid out of the public treasury already, the wisdom of the action of the selectmen of Southborough in requiring the defendant company to carry its tracks under the highway, and in not permitting a crossing at grade, cannot be questioned.  The condition imposing upon the defendant company the obligation of raising the highway not exceeding seven feet at the highest place for this purpose was reasonable and legal and was for the purpose of promoting the security of those lawfully travelling upon the highway.  In its last analysis it is simply an exercise of the easement of travel. See *White* v. *Blanchard Brothers Granite Co.* 178 Mass. 363.

Giving due weight to all these considerations, it must be held

that the injury which the plaintiff has suffered falls within the decision of *Callender* v. *Marsh, ubi supra,* and the numerous other cases, which have been reviewed, respecting street railway constructions in highways, and no right of action exists for it. The Legislature by St. 1903, c. 476, § 2, (St. 1906, c. 463, Part III, § 47,) now has provided in a general law for the crossing, either over or under the public way, by street railway tracks, and the payment of damage by the street railway company to the abutting landowners. *Gardiner* v. *Boston & Worcester Railroad,* 9 Cush. 1. But this statute has no application to the case at bar.

The location granted by the selectmen of Southborough contained no provision that abutting landowners should be compensated by the street railway for injuries sustained by them. Therefore the validity of such a clause is not before us. R. L. c. 112, § 44, has no application to the case at bar. *Laroe* v. *Northampton Street Railway,* 189 Mass. 254, at p. 256.

The report does not disclose the length of highway wherein the grade was raised opposite land owned by the plaintiff. If the original way was substantially level, the distance must have been about one hundred fifty-six feet on each side of the bridge, for the grade of approach to the bridge was required by the location to be not over four and one half per centum, and the maximum elevation seven feet. The plaintiff's real estate was a farm and she had sold to the defendant company land adjacent to that part of the highway where the bridge was constructed. She formerly had a rough roadway from that point on Center Road to her back land. The change in grade cut off this roadway, but at the plaintiff's request a substitute roadway was built coming near her barn. So far as appears, this substitute roadway provided as easy access as the former one. It is not a necessary inference from these facts, taking into account the general character of the land affected as being a part of a larger farm, that there was occasioned by the conditions of the location an unreasonable interruption of the plaintiff's right of access to the highway in proper places. It still may be an open question whether upon sufficient proof that all proper access from abutting property to the highway is cut off by acts of the kind here complained of, so that, considering the nature of the real estate and the uses to which it is reasonably suited, it cannot be adapted to

the improvement of which it is capable, a landowner may not seasonably secure relief in a proper form of remedy. *Eustis* v. *Milton Street Railway*, 183 Mass. 586.   2 Abbott, Mun. Corp. §§ 817, 818, 820, and cases cited.   Lewis, Eminent Domain, § 91 e, f, g and h, and cases cited.

The plaintiff contends that a construction of the statute, which goes to the extent of authorizing the selectmen to permit a change of grade for the purposes revealed in this case without compensation, is unconstitutional.   This argument proceeds upon a misconception as to the principles by which damages for the laying out of highways always have been determined in this Commonwealth.   *Callender* v. *Marsh*, 1 Pick. 418, was a case of even greater apparent hardship to the plaintiff than the present, and the question of constitutionality, although duly raised, was decided adversely to the plaintiff.   At page 432 Chief Justice Parker used this language: " When rightfully laid out, they [highways and public streets] are to be considered as purchased by the public of him who owned the soil, and by the purchase the right is acquired of doing everything with the soil over which the passage goes, which may render it safe and convenient ; and he who sells may claim damages, not only on account of the value of the land taken, but for the diminution of the value of the adjoining lots, calculating upon the future probable reduction or elevation of a street or road. . . . And he who purchases lots so situated, for the purpose of building upon them, is bound to consider the contingencies which may belong to them." The rule of damages was again fully discussed and stated in the recent case of *Como* v. *Worcester*, 177 Mass. 543, where at p. 548 it was said by Knowlton, J. : " In estimating the damages for the taking of the land, the value of the easement which holds it for a public use for the purpose of a street forever is to be included.   The city may use it as a street in any proper way, without making further compensation, except as statutes provide additional compensation for damages growing out of certain specified changes in the use. . . . The owner of the fee may use the street in any way which is not inconsistent with the paramount right of the public to use it, and this paramount right may include the laying of gas or water pipes, of sewers, of street railway tracks, the setting of posts for the support of electric wires, or any other use

of a public nature which is incident to the location and maintenance of the street." See further, *Boston* v. *Richardson*, 13 Allen, 146, 159; *Cassidy* v. *Old Colony Railroad*, 141 Mass. 174, 177; *Lincoln* v. *Commonwealth*, 164 Mass. 1, 10. When the ascertainment of compensation to the owner for the appropriation of land for a public way, by the law of the land, always has been determined upon this justly liberal rule, it cannot be said that any provision of the Constitution has been violated by any reasonable use for highway purposes of land so appropriated, which the advance of civilization may render proper. Land so appropriated cannot be given over to other uses than those of public travel. But so long as the purpose is public travel by reasonable devices, the landowner has already received his "just" (U. S. Const. Amendm. art. 5) and "reasonable" (Declaration of Rights, art. 10) "compensation," save in those instances where a new recovery of damages occasioned by changes is permitted by statute. This has been the uniform current of adjudication by this court. *Attorney General* v. *Metropolitan Railroad*, 125 Mass. 515. *Pierce* v. *Drew*, 136 Mass. 75. *Howe* v. *West End Street Railway*, 167 Mass. 46. *White* v. *Blanchard Bros. Granite Co.* 178 Mass. 363. *New England Telephone & Telegraph Co.* v. *Boston Terminal Co.* 182 Mass. 397. *Eustis* v. *Milton Street Railway*, 183 Mass. 586. *Sears* v. *Crocker*, 184 Mass. 586.

We therefore are constrained to rule in favor of the defendant company, leaving the plaintiff to such relief as she may be able to secure elsewhere. That it might be proper for the Legislature, by some general law, to provide compensation at the cost of the street railway companies, whose acts occasion the injury, for losses of the kind complained of in this and the other recent cases of damage, which hereinbefore have been discussed, is not for us to deny, but without such legislative provision, the court can afford no relief.

The plaintiff waived her exceptions to the direction of the verdict in favor of the defendants Shaw, and the defendants have not contended that the direction of the verdict in favor of the plaintiff against the defendants Rowe and Perini was not correct. The judgments therefore are to be entered in accordance with the rulings of the Superior Court, and it is

*So ordered.*