FRED A. CHENEY & others *vs.* FORREST E. BARKER
& others.

BOSTON CONSOLIDATED GAS COMPANY *vs.* FRED A. CHENEY
& others.

SAME *vs.* ALFRED L. MAGGI.

Suffolk.  March 9, 1908. — April 4, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, & SHELDON, JJ.

*Way,* Public. *Gas and Electric Light Commissioners. Boston Consolidated Gas Company. Easement. Constitutional Law. Certiorari. Mandamus. Chelsea. Statute.*

By St. 1896, c. 537, § 5, as amended by St. 1903, c. 417, § 9, the Boston Consolidated Gas Company, the successor of the Massachusetts Pipe Line Gas Company, after it has petitioned the aldermen or selectmen of any city or town, in whose streets it desires to construct and maintain its pipe line, for a grant of location, and such aldermen or selectmen have failed to act thereon for thirty days, is given the right within sixty days to appeal to the board of gas and electric light commissioners, and that board is given the power, after such notice and hearing as they may deem proper, to grant to the company reasonable locations for such pipe line; but no provision is made for compensation to the owners of the fee in land over which the public ways thus used run. *Held,* that the statute is constitutional, since such use is included in the easement which the public acquired by the location of the way.

The Legislature may provide for the use of the highways for the through transmission of gas without regard to the question whether any municipality through which the ways may pass, or those who own the soil of such ways, are served or in any way benefited by such use.

Assuming to act under St. 1896, c. 537, § 5, as amended by St. 1903, c. 417, § 9, which gives to the Boston Consolidated Gas Company the right to appeal to the board of gas and electric light. commissioners after it has petitioned the aldermen of a city through whose streets it desires to construct and maintain a pipe line for a location, stating in its petition " the termini of such pipe line . . . with as much particularity and certainty as practicable," and such aldermen have failed for thirty days to act thereon, and giving to the commissioners the power, upon such petition, to grant to the company "reasonable locations" for such pipe line, the company, desiring a location for a pipe line through certain streets of Chelsea for the purpose of connecting its works in Everett with those in East Boston, appealed to the commissioners after it had petitioned the board of aldermen of Chelsea for a grant of location and they had failed to act on the petition for thirty days.  The petition stated, with the required particularity, the points where the company desired the line to enter and leave the city, and the streets through which it desired it laid, and referred to plans drawn for that purpose.  Included in the route stated in the petition were nine hundred and twenty feet which were not in any street, lane

or highway of the city, but were on private land and were stated to be so. The commissioners after a hearing granted the location as prayed for. The city of Chelsea petitioned for a writ of certiorari to quash the proceedings of the commissioners, and contended that, since the petition prayed for a location which went in part through private land through which the commissioners had no right to grant a location, it prayed for two locations, one running from a terminus to the private land, and the other running beyond the private land to the other terminus named, and that, in granting it, the commissioners had exceeded their powers. *Held*, that the petition for a writ of certiorari should be dismissed, since the commissioners had not exceeded their powers, it being immaterial that a part of the location of the proposed line was through private land, the termini in the public streets being stated with the required particularity.

Pending action by the board of gas and electric light commissioners on an appeal to them by the Boston Consolidated Gas Company under St. 1896, c. 537, § 5, as amended by St. 1903, c. 417, § 9, for a location for a pipe line in the streets of Chelsea after the board of aldermen of that city had failed for thirty days to act upon a petition for such location, the aldermen granted the petition subject to conditions as to what labor should be employed by the company and the terms of such employment. *Held*, that the company had the right to disregard the action taken by the aldermen after it had appealed to the commissioners.

In 1907, sections 3 and 4 of chapter 14 of the ordinances of Chelsea provided that the superintendent of streets might issue to persons having authority in the premises permits for opening and making excavations in the city streets, and that, if he refused to do so, the party applying therefor might appeal to the board of aldermen, whose decision should be final. In that year the board of gas and electric light commissioners, on an appeal to them by the Boston Consolidated Gas Company under St. 1896, c. 537, § 5, as amended by St. 1903, c. 417, § 9, after the board of aldermen of Chelsea had failed for thirty days to act upon a petition of the company for a location for a pipe line in the streets of the city, granted the location prayed for. The superintendent of streets, however, refused to issue a permit to the company, and the company appealed to the board of aldermen, who also refused to issue any permit; and thereupon the company petitioned for writs of mandamus, one against the superintendent of streets and the other against the board of aldermen, praying that the respective respondents be directed to issue the permit requested. *Held*, that the petition against the superintendent of streets should be dismissed, since by the appeal of the petitioner to the aldermen the latter had acquired full power to pass upon the application; and, *also*, that, since the aldermen had refused to issue any permit, the petition against them should be granted and that the writ should issue, since the company by the action of the commissioners had acquired the absolute right to such a permit, although, by the statute above referred to, it was "subject to such regulations and restrictions in respect to the manner and time of conducting the work as" the aldermen should prescribe, such requirements being only conditions subsequent to the vesting of the right.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk October 28, 1907, for a writ of certiorari to quash an order of the board of gas and electric light commissioners granting to the Boston Consolidated Gas Company locations for a pipe line in certain highways in Chelsea; also

TWO PETITIONS, filed in the same court on November 20, 1907, for writs of mandamus directing the aldermen and the superintendent of streets of Chelsea, respectively, to issue to the petitioner a permit to open and make excavations in Williams Street for the purpose of laying its pipe line therein in accordance with the order of the board of gas and electric light commissioners.

The cases were consolidated and heard together before *Sheldon,* J. It appeared that the petition of the Boston Consolidated Gas Company to the board of aldermen of Chelsea, referred to in the opinion, was presented to them June 28, 1907, and in substance was for a location for a pipe line as follows:

"Beginning at the northerly terminus of Williams Street . . . which point is at or near the northerly side of Spruce Street, extended to, into or across said Williams Street . . . the location of said pipe line to be ten feet more or less distant easterly from the centre line of said Williams Street . . . thence . . . [through various specified public streets] . . . thence continuing by the same course along and through a private way in continuance of said Central Avenue and on the northerly side of said centre line of said private way upon and over land now belonging to the Boston & Albany Railroad Company a distance of nine hundred twenty feet, more or less, to Eastern Avenue; thence southerly in said Eastern Avenue and the street leading to the Chelsea Street bridge, so-called, between Chelsea and East Boston, five hundred forty feet, more or less, as is more fully shown on a set of three plans, entitled, . . . [describing the plans by names]."

The appeal of the gas company to the board of gas and electric light commissioners, referred to in the opinion, was filed August 14, 1907. A hearing was had on September 4, at which counsel appeared for the gas company, but the city of Chelsea was not represented. The hearing was adjourned to September 17, and, in the meantime, on September 16, the board of aldermen of Chelsea acted on the petition of the gas company, granting it subject to certain stipulations as to the condition in which the company should leave the streets, as to preference to be given to citizens of Chelsea in the hiring of help, rates to be paid for labor, and the number of hours which should constitute

a day's work. On September 20, the board of gas and electric light commissioners granted to the gas company the location it had asked for in its petition to the board of aldermen in accordance with the description therein contained, the plans being stated to be filed in the office of the board. On October 2, 1907, the gas company in writing requested the superintendent of streets of Chelsea to issue a permit to open and lay pipes in Williams Street, and, he refusing to issue such permit, the company appealed to the board of aldermen on October 7, who also refused to issue it.

Other facts are stated in the opinion.

The presiding justice reserved the cases for consideration by the full court.

*T. Hunt*, (*W. P. Motley*, with him,) for the Boston Consolidated Gas Company.

*S. R. Cutler*, (*H. W. James* with him,) for the city of Chelsea and others.

*D. Malone*, Attorney General, & *F. B. Greenhalge*, Assistant Attorney General, for the Board of Gas and Electric Light Commissioners, submitted a brief.

SHELDON, J. The first of these cases is a petition for a writ of certiorari to quash an order of the board of gas and electric light commissioners granting to the Boston Consolidated Gas Company, hereinafter called the Boston Company, or simply the company, locations for a pipe line in certain streets, lanes and highways in the city of Chelsea. It has been reserved for the consideration of this court upon the petition and answer and return of the respondents, and certain agreed facts. The Boston Company is the lawful successor in title to the Massachusetts Pipe Line Gas Company, under St. 1903, c. 417, and has all the rights given to that company by St. 1896, c. 537, if all the provisions of those statutes are constitutional, which the petitioners deny.

The Massachusetts Pipe Line Gas Company was incorporated by St. 1896, c. 537; and § 5 of that act, as amended by St. 1903, c. 417, § 9, provides as follows: "If the company shall desire for its pipe lines the right to construct, maintain and operate the same in the streets, lanes and highways of any city or town, it shall petition the aldermen or selectmen therefor, stating

the termini of such pipe line in such city or town with as much particularity and certainty as practicable, and stating the streets, highways and lanes in which the company desires to locate such pipe line; and the aldermen or selectmen may grant that location, or such other location in such streets, lanes and highways as they shall deem proper. In the event that said aldermen or selectmen shall for a period of thirty days refuse or neglect to grant a location, or if the company is dissatisfied with the location granted, it may within sixty days thereafter appeal to the board [of gas and electric light commissioners], who, after such hearing and notice as they shall deem proper, may grant to the company reasonable locations between said termini for such pipe line in the streets, lanes and highways of said city or town. Upon the granting of such locations by said aldermen, selectmen or board, the company may lay, construct, maintain and operate such pipe line in the location granted. Similar rights as to additional pipe lines in the same city or town shall be obtained only by permission of the board. The company may, upon obtaining such locations, and subject to such regulations and restrictions in respect to the manner and time of conducting the work as said aldermen or selectmen shall prescribe, dig up and open the ground in any of the streets, lanes and highways of said city or town so far as is necessary to accomplish the object of the corporation; but such grant shall not affect the right or remedy to recover damages for an injury caused to persons or property by the doings of the company. It shall put all such streets, lanes and highways which are opened by it in as good repair as they were when opened, and to the satisfaction of the local authorities of the city or town in which such streets, lanes or highways are located, and upon failure so to do within a reasonable time shall be deemed guilty of a nuisance. In constructing, maintaining, repairing or extending its distributing system in any city or town the company shall be subject to all the restrictions, regulations and liabilities set forth in section seventy-five of chapter one hundred and six of the Public Statutes, except as in this act provided; and in the construction, maintaining, repairing and extending of its pipe lines and distributing systems it shall in all cases be subject to the restrictions, regulations and liabilities set forth in sections seventy-

six and seventy-seven of said chapter one hundred and six. If in making such excavations any water or gas pipes, sewers, drains, conduits or other subterranean works are disturbed or interfered with, the same shall, at the expense of the company, be restored to as good condition as they were in before such excavation. All locations granted under this section shall be subject to revocation by said aldermen or selectmen respectively, subject to the approval of said board."

In June, 1907, the Boston Company presented to the board of aldermen of the city of Chelsea a petition for the grant of a location for a proposed pipe line to run through certain named public ways of that city, and also at one point over certain private property, from a point near the boundary line of the city of Everett to a point near the boundary line of the city of Boston. This pipe line was for the purpose of connecting the works of the Gas Company in Everett through the city of Chelsea with those of the East Boston Gas Company. The board of aldermen neglected for more than thirty days to grant this or any other location; and thereupon the company appealed to the board of gas and electric light commissioners, which after a hearing made the order in question, granting the same locations as described in the original petition.

The petitioners in this case contend that the statute already quoted, St. 1896, c. 537, § 5, as amended by St. 1903, c. 417, § 9, is unconstitutional and void, so far at least as it provides for the laying of pipe lines in public ways. Their claim is that the effect of this is to impose an additional servitude upon the lands over which the way is laid out, and that, as there is no provision for compensation to the owners of the fee in such lands, the provisions which impose such an additional servitude are void.

The first question accordingly to be considered is whether the laying of a pipe line for the transmission of gas through and under a public street does impose such an additional servitude, for which the owner of the land must have compensation secured to him. A pipe line is defined in the act as being "a line of pipes, mains or conduits, with the manholes and other apparatus necessary for the operation thereof, connecting a distributing system, plant for the manufacture of gas, or other pipe line, with any distributing system, plant, pipe line, town or city."

St. 1896, c. 537, § 2.   The general rule established in this Commonwealth is stated by Holmes, J., in *Lincoln* v. *Commonwealth*, 164 Mass. 1, 10.   " When land is taken for a highway, all uses of the land directly or incidentally conducive to the enjoyment of the public easement which the necessity and convenience of the public may require, either then or in the future, are paid for, wherever the highway may be.   *Boston* v. *Richardson*, 13 Allen, 146, 159, 160.   It sometimes is said that the whole beneficial use of the land is taken.   *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75, 77.   As practically the landowners get the full value of their land in such cases, if there is any injustice it is not they who suffer it.   *Brainard* v. *Clapp*, 10 Cush. 6. *Cassidy* v. *Old Colony Railroad*, 141 Mass. 174, 177.   *Newton* v. *Perry*, 163 Mass. 319. . . . Also, it is held that the public right extends to authorizing companies to make use of the streets.   *Pierce* v. *Drew*, 136 Mass. 75, 81.   *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75."   And see *Hyde* v. *Boston & Worcester Street Railway*, 194 Mass. 80.   The same doctrine has been applied to such underground uses of the public streets as the laying of common sewers, main drains, water pipes, conduits, subways and gas mains, either by private companies or by officers acting for the public.   *Sears* v. *Crocker*, 184 Mass. 586.   *Chelsea Dye House Co.* v. *Commonwealth*, 164 Mass. 350, 353.   *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75.   In *Pierce* v. *Drew*, 136 Mass. 75, 81, Devens, J., said: " It has never been doubted that by authority of the Legislature, highways might be used for gas or water pipes intended for the convenience of the citizens, although the gas or water was conducted thereunder by companies formed for the purpose."   And in *Commonwealth* v. *Morrison*, 197 Mass. 199, Rugg, J., said, with a very full citation of the cases: " The public secure by the location of a highway an easement of passage, with all the powers and privileges which are necessarily implied as incidental to its exercise.   The easement is coextensive with the limits of the highway.   The fee of the land remains in the landowner, who may make any use of it not inconsistent with the paramount right of the public. . . . The easement acquired by the public includes every reasonable means of transportation for persons and commodities, and of transmission of in-

telligence, which the advance of civilization may render suitable for a highway. Under this description gas and water pipes, sewers, telephone, telegraph, electric light and power poles, wires and conduits, electric and horse railways, the Boston subway and private railroads have been permitted." We cannot doubt the power of the Legislature to authorize the laying of lines of gas pipes under the surface of the public streets without providing any compensation for the owners of the fee in the soil of those streets.

But the petitioners claim that the pipe line under the statutes in question differs from an ordinary gas main, because it is not intended for the use of the citizens of Chelsea, its presence is not and is not intended to be beneficial to the abutting and adjoining property, and therefore, as they contend, cannot be regarded as fairly incident to the public use of the highways in the community in which they are located. This contention is not inconsistent with some of the language used in our own decisions already referred to, and is supported by cases decided in some other States. *Van Brunt* v. *Flatbush*, 128 N. Y. 50. *Bloomfield & Rochester Natural Gas-Light Co.* v. *Calkins*, 62 N. Y. 386. *Kincaid* v. *Indianapolis Natural Gas Co.* 124 Ind. 577. *Sterling's appeal*, 111 Penn. St. 35. *Ward* v. *Triple-State Natural Gas Co.* 25 Ky. Law Rep. 116. But it is wholly inconsistent with the principles adopted in this Commonwealth. Indeed, the remark of Holmes, J., in *Lincoln* v. *Commonwealth*, 164 Mass. 1, 10, as to *Van Brunt* v. *Flatbush*, 128 N. Y. 50, may be applied also to the other cases just referred to.

Our roads or public ways are established for the common good and for the use and benefit of all the inhabitants of the Commonwealth. *Hodgdon* v. *Haverhill*, 193 Mass. 406, 410. *Prince* v. *Crocker*, 166 Mass. 347. The mere fact that the burden of their construction and maintenance has to a large extent been put upon the cities and towns in which they are situated gives to those cities or towns or to their inhabitants no peculiar privileges in such ways. As was said by Allen, J., in the opinion in the case last cited, (166 Mass. 359,) "the powers which have been given to cities and towns by the Legislature, by special or by general laws, are in no sense a contract, and do not become vested rights as against the Legislature." *A fortiori*, the Legis-

lature in determining whether any particular public use, in its general nature permissible, shall be allowed to be made of a public highway, is not to be restricted to such uses as may be of themselves beneficial to the abutters upon that way. Because the highways are established by State authority for the general good, and because our laws make no distinction among them as to rural ways or urban streets or otherwise, such as was declared in the decisions from other States above referred to, and because "the Legislature is the supreme authority in regard to public rights in the streets and highways," (Knowlton, C. J., in *Boston Electric Light Co.* v. *Boston Terminal Co.* 184 Mass. 566, 570,) the Legislature may provide for the use of the highways in the State as well for through travel as for the through transmission of gas, water or other commodities from one place to another, without regard to the question of whether any municipality through which the ways may pass or those who own the soil of the ways subject to the public easement therein are served or in any way benefited by such use. Nor do the municipal officers in granting such locations as are here in question act in any way as agents of the city or town, but solely as public officers specially designated by the Legislature for that purpose. *Flood* v. *Leahy*, 183 Mass. 232, 236.

It may be added that the Legislature often has exercised this authority, and we are not aware that it ever has been called in question. The original act for the supply of water to the city of Boston provides for the transportation of water from the towns of Framingham, Natick and Wayland to Boston by aqueducts or other works, " to be made and constructed, over or under . . . any street, . . . highway or other way," without any provision for compensation to the owners of the soil of such highways or any intimation that it was or could be regarded as being an additional servitude imposed upon this land. St. 1846, c. 167, § 2. And this is but a type of many other water acts which might be referred to.

The constitutionality of the statute has not been assailed on any other ground than that above considered. The grant of a location by the express terms of the statute will not affect the right or remedy to recover damages for any injury caused to persons or property by the doings of the company. We are

abundantly satisfied that there is nothing in this contention of the aldermen of the city of Chelsea.

Nor do we think it material that a part of the location of the proposed pipe line is to run through private land. Of course the grant of a location through the streets will not give any right against the owner of other land; and the Boston Company will have to depend for that upon the license which it has secured from the private owner. But this does not affect the jurisdiction of the aldermen or of the board of gas and electric light commissioners upon appeal. The statute requires as to the terms of the petition merely that it shall state the termini of the pipe line with as much particularity and certainty as practicable, and the streets, etc., in which the company desires to locate it. Looking at the petition in connection with the plans to which it refers, these requirements appear to have been complied with. The aldermen neglected to act upon this petition for more than thirty days, and the board of gas and electric light commissioners acquired upon the company's appeal seasonably made power to grant to the company "reasonable locations between said termini for such pipe line" in the streets. St. 1903, c. 417, § 9. The contention that the termini at each side of the private land must be stated as a matter of strict necessity, that it is a jurisdictional averment within the meaning of the statute, is without merit. This conclusion accords with the reasoning of the court in *Farnum* v. *Haverhill & Andover Street Railway*, 178 Mass. 300. The company had the right to regard the action of the aldermen taken only after the expiration of the thirty days as a mere nullity, even if they had had the power to impose all the conditions which they attempted to prescribe. The locations given to the company by the board of gas and electric light commissioners are good and valid.

Accordingly the petition for a writ of certiorari must be denied.

The second and third cases are petitions by the Boston Company for writs of mandamus, brought respectively against the aldermen and the superintendent of streets of the city of Chelsea, to have them commanded to issue to it a permit to open and make excavations in Williams Street in that city for the purpose of laying its pipe line therein. Williams Street is

one of the streets in which a location has been given to the company as already stated. The superintendent of streets, though properly requested to issue such permit, refused to do so; and the company appealed from this refusal to the board of aldermen, which has failed to act upon the appeal.

We think it manifest that the company is entitled to such a permit, although by the terms of the section of the statute already quoted its action under the permit must be " subject to such regulations and restrictions in respect to the manner and time of conducting the work " as the aldermen shall prescribe. The company is expressly given power to dig up and open the ground, subject to such regulations and restrictions, although it then must put the street into its former condition of repair, to the satisfaction of the local authorities, or be deemed guilty of a nuisance. But these requirements refer to the manner in which the company shall conduct its work and restore the street; they are only conditions subsequent to the vesting of its rights. The company has acquired the absolute right to a permit which was spoken of in *French* v. *Jones*, 191 Mass. 522, 531, and which was found not to exist in that case. And see the cases there cited. We think it plain that the petitioner's right is one which may be enforced by mandamus; and the only question is whether that writ should be directed to the superintendent of streets or to the members of the board of aldermen.

The ordinances of the city of Chelsea provide that the superintendent of streets may issue such a permit, and that if he refuses to do so the party applying therefor may appeal to the board of aldermen, whose decision shall be final. Ordinances of Chelsea, c. 14, §§ 3, 4. Under these circumstances, we are of opinion that the writ should be issued to the board of aldermen, before which board the company's appeal is now pending. It is a general principle that mandamus will not be issued where any other remedy is available. *Selectmen of Gardner* v. *Templeton Street Railway*, 184 Mass. 294. *Perry* v. *Hull*, 180 Mass. 547. There perhaps may be room for doubt whether the company could have maintained a petition for mandamus against the superintendent of streets if it had not availed itself of the remedy given by an appeal to the board of aldermen. But that question is not before us. However that may be, the aldermen by the appeal acquired

full control of the matter and full power to pass upon the application; and the duty rested upon them to do so. It was their duty to grant the permit and thus correct the error of the superintendent of streets. And there is no doubt that mandamus properly may go against them. *Keough* v. *Board of Aldermen of Holyoke,* 156 Mass. 403. It is not for the company in the first instance to ask the aldermen to prescribe regulations and restrictions as to the time and manner of conducting the work to be done. If the aldermen should desire to do this, they may do so; but it is their duty at any rate to issue the permit asked for.

Accordingly the petition for a writ of certiorari must be dismissed; a writ of mandamus will be issued on the petition against Cheney and others; and the petition for a writ of mandamus against Maggi must be dismissed.

