JOHN T. FLOOD & others *vs.* JOSEPH T. LEAHY & others.

Norfolk. December 3, 4, 1902. — April 2, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Municipal Corporations.*

In granting a location to a street railway company the selectmen of a town act, not as agents of the town, but as public officers, and are not bound to follow instructions, as to conditions to be imposed in granting the location, contained in a vote passed at a town meeting.

A town has no authority to borrow money for the purpose of paying counsel, in order to procure the insertion of conditions in the grant of a location by the selectmen of the town to a street railway company, relating to the residence and wages of laborers to be employed by the company or the rate of fare for passengers in general.

A vote of a town to borrow money for the purpose of paying counsel to procure the insertion of conditions, in the grant of a location by the selectmen of the town to a street railway company, in regard to matters in some of which the town can have no corporate interest, is wholly void, although other of the conditions sought to be imposed by the same scheme may relate to matters in which the town may have a corporate interest.

Whether a town can raise money for the purpose of paying counsel to procure the insertion of conditions, in the grant of a location by the selectmen of the town to a street railway company, in regard to matters affecting the corporate interest of the town, such as the expense of keeping the streets in repair, *quære.*

PETITION, filed September 3, 1902, under R. L. c. 25, § 100, by ten taxable inhabitants of the town of Randolph, to restrain the first named respondent, the treasurer of that town, from borrowing $300 for the purpose of carrying out a vote passed at a special town meeting, in regard to requiring the insertion of certain conditions in any location or franchise to be granted to the Old Colony Street Railway Company, and to restrain the other respondents, acting as a committee, from employing counsel in accordance with the vote.

The respondents demurred to the petition. In the Superior Court *Hardy*, J. overruled the demurrer, and made a final decree granting the relief prayed for. The respondents appealed.

*C. F. Choate, Jr.*, for the respondents.

*J. V. Beal*, for the petitioners.

HAMMOND, J. The power of a town to raise money by taxation is not commensurate with the power to tax which is conferred by the Constitution upon the Legislature. It is entirely a creature of statute, including only so much of the general power as the Legislature delegates to the town. The only question raised in this case is whether the purpose for which the money was to be expended was a " necessary charge " within the meaning of the last clause of R. L. c. 25, § 15. This clause has been called many times to the attention of the court, and its general scope has been quite clearly outlined.

So far as material to this case, towns are to be considered as quasi corporations with limited powers coextensive with the duties imposed upon them by statute or usage. In *Vincent* v. *Nantucket*, 12 Cush. 103, this court, speaking through Merrick, J., said : " Their contracts will be valid when made in relation to objects concerning which they have a duty to perform, an interest to protect, or a right to defend. But here is the extent at once, of their right and their power. They cannot engage in enterprises foreign to the purposes for which they were incorporated, nor assume responsibilities which involve undertakings not within the compass of their corporate powers." The statute in question has been construed in consonance with these general principles. See among other cases, *Stetson* v. *Kempton*, 13 Mass. 272 ; *Parsons* v. *Goshen*, 11 Pick. 396 ; *Minot* v. *West Roxbury*, 112 Mass. 1, in which cases the action of the town was declared

illegal; and *Woodbury* v. *Hamilton*, 6 Pick. 101; *Allen* v. *Taunton*, 19 Pick. 485; *Curran* v. *Holliston*, 130 Mass. 272; and *Dunn* v. *Framingham*, 132 Mass. 436, in which the action was declared legal.

It is to be noted that the duty, right, or interest must be corporate, as distinguished from the individual duty, right, or interest of the inhabitants of the town. No matter how important or general these individual rights or duties are, they do not thereby become corporate within the meaning of the rule. There can be no doubt, for instance, that, in the case of a threatened incursion of an enemy in time of war, it would be of the highest importance to the individual interests of the inhabitants that proper steps should be taken for defence; and yet it was held in *Stetson* v. *Kempton, ubi supra*, that, there being no corporate duty resting upon the town to provide for the defence, it could not lawfully raise money by taxation for that purpose.

The cases of *Vincent* v. *Nantucket, ubi supra*, and *Fuller* v. *Groton*, 11 Gray, 340, when contrasted with each other, furnish a good illustration of the application of the rule which has been followed in construing the statute. In the first case it was held that the town was not bound by its corporate vote to pay the expenses incurred by a field driver in defending a suit brought against him for taking up and impounding cattle running at large contrary to law. The ground of the decision was that "in relation to field-drivers, the whole corporate power of a town is exercised and exhausted in their election. It has afterwards no guardianship, control, or authority over them," and they are not acting in relation to any corporate duty imposed upon the town. In the second case an appropriation by a town to pay the expenses incurred by members of the school committee in defending a suit brought against them for an alleged libel contained in their annual report was held valid, upon the ground that there was imposed upon the town the corporate duty to raise money for the support of the schools, to choose a committee to superintend them, and through the committee to make an annual report of their condition.

In proceeding to apply these principles to the vote in question, it becomes necessary to see what is the fair interpretation

of it when taken in connection with the other votes passed at the same meeting upon the same general subject, and whether, as thus interpreted, it relates to a matter as to which the town in its corporate capacity has a right, duty or interest.

There were three votes. The first was that " in addition to statutory requirements the selectmen be instructed to insert in any franchise or location that may be granted upon any petition of the Old Colony Street Railway Company " certain conditions thereinafter particularly enumerated. The conditions prescribed the size and weight of the rail upon which the street car was to be run, the portion of the street and gutter to be paved by the railway company and the kind of paving stone to be used, and required that the remaining portion of the street should be macadamized by the company. Further conditions to be imposed were that " laborers resident in the town and citizens owning teams shall be employed in the work in preference to any others, and the hours of labor and the wages therefor shall conform to the standard established by vote of the town at its annual town meeting "; and that there should be but " one fare of five cents from any point in Randolph to any point in Brockton." The second vote provided for the appointment of " a committee of five to confer with the board of selectmen or independently attend upon any board, court, or other tribunal to represent the town upon all questions of franchises, tracks or locations that heretofore have or hereafter may be granted to or made with any street railway company, its officers, servants or agents, or any person that may have been appointed in place of said street railway co., its officers, servants or agents," and authorized the committee to employ counsel. The third vote instructed the treasurer to borrow $300 " to carry into effect " the second vote. All these votes were passed at a special town meeting held in the month of August, and they suggest the existence of a disinclination of many people in the town to trust the subject to the discretion and action of the selectmen. The purpose was to have the conditions named in the first vote annexed to grants of street railway locations, to attain this purpose, if possible, by so called instructions to the selectmen, or by a conference between these officers and the committee appointed under the second vote, and, if these methods failed, then

by independent action on the part of the committee aided, if necessary, by counsel. This money was to be expended in carrying out this general scheme.

Of course the selectmen were not bound to follow the instructions contained in the first vote. In the matter of granting locations they act not as agents of the town but as public officers specially designated by the law-making power for that purpose. It is plain that in the matter of several of the conditions the town has no corporate interest whatever, for instance, those relating to the residence and wages of the laborers to be employed and to the rate of fare for the passengers in general. If it be said that the town may have a corporate interest in some other of the questions involved in the granting of the locations, as, for instance, where the expense of keeping the streets in repair may be affected by the conditions which may be lawfully imposed, and that therefore it may raise money to protect its interest, a question upon which we need not now express an opinion, the reply is that, even if that be true, it is plain that the money was to be used to carry out the scheme as a whole, and the authority to borrow being granted as a whole and there being no way of separating the valid from the invalid, the whole vote must be declared invalid.

*Decree affirmed.*