## WINFIELD S. PEARL *vs.* INHABITANTS OF REVERE.

Suffolk.   November 30, 1914. — December 31, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Municipal Corporations,* Officers and agents.   *Waterworks.   Revere.*

Assuming that a statute might be framed to compel the furnishing of water by a municipality under such conditions that the town or city would have no private interest in the matter and would act wholly as a public instrumentality, St. 1904, c. 457, authorizing the town of Revere to establish a system of water supply for the extinguishment of fires and for domestic and other purposes, is not of that character.

Under St. 1904, c. 457, the water commissioners of the town of Revere are not independent public officers free from the control of the town but are agents representing the town in carrying on the water supply business from which an income is derived that may result in a limited profit; and consequently the town is liable for injuries caused by the negligence of an employee of the water commissioners while acting within the scope of his employment.

The liability of a town for injuries caused by the negligence of the employees of its water department while acting within the scope of their employment is not affected by the question whether the water supply business as carried on by the town is profitable.

The liability of a town for injuries caused by the negligence of the employees of its water department while acting within the scope of their employment is not affected by the fact that the water with which the town conducts the water supply business is obtained from the metropolitan water system.

RUGG, C. J.   The only question presented by this report is whether the defendant is answerable in damages for injuries caused by the negligence of an employee of its board of water commissioners. By St. 1904, c. 457, the defendant was authorized to establish a system of water supply for the extinguishment of

fires and for domestic and other purposes. The burden of doing this was not imposed upon the town by the command of the Legislature, but was permitted at the option of the defendant to be manifested by popular vote.

The distinction long has been established between the liability of municipalities for acts done in their public capacity in the performance of functions required of them by the Legislature for the common good and for acts done in their private capacity in the management of property voluntarily held and devoted to business enterprises undertaken for their own profit, although ultimately subserving a public need. *Oliver* v. *Worcester*, 102 Mass. 489, 499. *Moynihan* v. *Todd*, 188 Mass. 301. It has been repeatedly held, in the application of this well settled distinction, that the establishment and maintenance of a system of water supply in part for the use of inhabitants who pay for the necessity thus supplied, is a commercial venture, and that for negligence in connection therewith the city or town is liable as a private corporation would be in performing a similar service. *Hand* v. *Brookline*, 126 Mass. 324. *Perkins* v. *Lawrence*, 136 Mass. 305. *Stoddard* v. *Winchester*, 157 Mass. 567. *Fox* v. *Chelsea*, 171 Mass. 297. *Johnson* v. *Worcester*, 172 Mass. 122. *Lynch* v. *Springfield*, 174 Mass. 430. *Kelly* v. *Winthrop, ante,* 471. *Murray* v. *Boston, ante,* 501. These are direct adjudications. There are numerous other opinions where reference has been made to this liability by way of illustration or in a chain of reasoning. *Hill* v. *Boston*, 122 Mass. 344. *Tindley* v. *Salem*, 137 Mass. 171. *Haley* v. *Boston*, 191 Mass. 291, 292. See *Watson* v. *Needham*, 161 Mass. 404.

It may be conceded that a statute might be so framed as to compel the furnishing of water by a municipality under such conditions that it might have no private interest in the matter and might act wholly as a public instrumentality. See *German Alliance Ins. Co.* v. *Home Water Supply Co.* 226 U. S. 220, 227. But the present statute is not of that nature.

The defendant seeks to take itself out from this well recognized rule. It argues that the statute creates the board of water commissioners as independent public officers quite free from the control of the town. This board is clothed with powers in some respects more extensive than are conferred by other statutes upon similar officers. But they represent the interests of the town and

are no more than its agents in exercising the functions conferred by the statutes. It is usual, where the statutes provide for water commissioners, to vest them with broad control over the details of management. The differences in this respect between the present statute and others of the same character are not of kind but only of degree. The extent of the direction which may be exercised over conduct of the commission by the voters of the town in town meeting is of little moment. The decisive test is whether it is a service voluntarily undertaken by the town without compulsion, from which income and profit may accrue to the municipality. The Revere water act, St. 1904, c. 457, § 10, although phrased rather obscurely, means, when rightly construed, that the prices for the sale and use of water shall be fixed at such rate as shall yield a revenue sufficient to produce, after paying all operating expenses, including payments for the purchase of water from the metropolitan water board and interest charges on all loans incurred in connection with the water system, as well as the current expenses of carrying on the waterworks, and after paying the cost of new constructions, not exceeding $3,000 in any one year, "as near as may be a net surplus . . . equal to two per cent of the total amount of bonds, notes and scrip issued" and outstanding under the terms of the act, which surplus shall be paid into the treasury of the town. St. 1904, c. 457, § 10. This provision of the statute makes it plain that a limited profit, or at least something toward a fund to take care of depreciation, is contemplated by the statute. The town is also empowered to supply water to inhabitants of a part of the town of Saugus. All this savors of a commercial transaction rather than a strictly governmental service solely for the public welfare. See *Merrill* v. *Revere*, 211 Mass. 468, 471. Whether the town was in fact making this business profitable or not was immaterial, as rightly was ruled by the Superior Court. It is the essential nature of the undertaking which is decisive. The town does not conduct this branch of its municipal functions on anything like the same basis as it maintains schools, highways, and its police and fire departments.

The defendant further contends that it is a part of the metropolitan water system and is entitled to the immunities which attach to that public undertaking under St. 1895, c. 488, and acts

in amendment thereof. But this contention cannot be sustained. *Kelly* v. *Winthrop, ante,* 471. The defendant voluntarily entered into the business of supplying water. The metropolitan water act does not go so far as to sweep into the control of the State officers, charged with the administration of that system, the local water-works of each city and town within the district. In general these remain in the same ownership and management as before, subject to the same duties and liabilities. The provisions of St. 1907, cc. 349 and 524, and St. 1909, c. 177, are designed to prevent waste of water bought from the metropolitan supply. They have no effect toward relieving the cities and towns from settled principles of liability.

*Judgment for the plaintiff on the verdict.*

*S. R. Cutler,* for the defendant.

*J. J. O'Connor,* for the plaintiff.