BIGELOW, KENNARD AND COMPANY, INCORPORATED, *vs.* CITY OF BOSTON.

Suffolk.    October 23, 1925. — November 24, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Contract,* Exempting municipal corporation from liability for tort, Validity.

A city, in making through its water department a contract with the owner of a building to install for the actual cost of installation a pipe furnished by the city running from a water main in an adjoining street to a point inside the building, which pipe was to be used for fire prevention purposes, no charge to be made by the city for water furnished for that purpose, may make and enforce an agreement that it should not "be held responsible for any damage resulting from the pipes or the laying or placing thereof."

*Whether,* in the circumstances above described, the city in laying the pipe acted in its governmental capacity and for that reason was exempt from liability, was not determined.

CONTRACT OR TORT for damages caused by the bursting of a water pipe laid by the defendant for the plaintiff. Writ dated December 29, 1920.

In the Superior Court, the action was tried before *Keating*, J.  Material evidence is described in the opinion.  At the close of the evidence for the plaintiff, the defendant rested.  The trial judge allowed a motion by the defendant that a verdict be entered in its favor and reported the action to this court for determination, the parties agreeing that if the order for a verdict for the defendant was right, judgment should be entered on the verdict; and if the case ought to have been submitted to the jury, judgment should be entered for the plaintiff in the sum of $1,556.30.

*H. Williams, Jr.,* for the plaintiff.

*H. Power,* Assistant Corporation Counsel, (*D. J. Gillen,* Assistant Corporation Counsel, with him,) for the defendant.

CROSBY, J.  This is an action of contract or tort for damage caused by the bursting of a pipe in West Street, adjacent to the plaintiff's premises on the corner of West Street and Washington Street, in Boston.  The case is before us on a report by a judge of the Superior Court.

It is stated in the report that on or about July 17, 1911, at the request of the plaintiff, the defendant installed a four inch cast iron pipe running from the defendant's water main in West Street to a point inside the wall of the plaintiff's building, where a plumber, employed by the plaintiff, connected it with a fire hose maintained by the plaintiff.  This pipe was wanted because its presence reduced the fire insurance rates on the building; and the only way it could be obtained was to have the defendant put it in, as the city does not allow a private party to install a pipe of this kind.  The defendant furnished the pipe, did the work of installing it, and made a charge to the plaintiff for the actual cost of the labor and materials, which the plaintiff paid.  The defendant derived no profit from the performance of the work.  The pipe was for no other purpose than as above set forth.  There was no meter in it; there was evidence that there was no charge made for water furnished for this class of service.  No water was ever used, and no charge was made for water.

On November 21, 1919, about three o'clock in the morning, the pipe broke at a point in West Street just outside the curbing of the sidewalk, and flooded the basement and sub-

basement of the plaintiff's store, breaking through the wall and causing damage to the heating apparatus, machinery, and goods.   There was evidence from which the jury could have found that the normal life of a pipe of this character, if without flaw and properly installed, was from forty to sixty years.   There was also evidence from which it could have been found that the part of the pipe where the break occurred was laid over a portion of the street that had been dug up shortly before by the plaintiff in the construction of the building, and was softer and a less solid support for the pipe than it had at other parts of its span, and that no special precautions had been taken to strengthen its support at this point.

It appeared that, before the pipe was laid, the plaintiff made an application to the income branch of the water department of the city upon a regulation printed form, which was introduced in evidence (a copy is attached as a part of the report), wherein the applicant agreed "that neither the City nor its agents nor employees are to be held responsible for any damage resulting from the pipes or the laying or placing thereof or from any withholding of the water for any cause or reason."   A drawing and a plan were attached to the application and it was signed by the plaintiff.   A deposit of the estimated cost was required to be made before the application could be granted; the plaintiff accordingly made the deposit of $150.   The application was delivered to the water service distribution department of the city, which laid the pipe.   This is the only department authorized to lay a pipe to connect with the water system; for the reason, it was stated, that it is necessary to tap into a large main in the street, and the water department has special machinery for doing it in a manner to avoid injury to the building which is being connected with the main, and to other consumers of water. The foregoing is all the evidence material to the issues raised at the trial.   At the close of the plaintiff's case, the defendant rested and presented a motion that a verdict be directed in its favor, which was allowed, subject to the plaintiff's exception.

It is the contention of the defendant that it is not liable

upon two grounds: (1) that the city in installing the pipe acted in its governmental capacity; and (2) that the plaintiff by the express terms of its contract with the city exempted it from liability for any damages resulting from the laying of the pipe.

Considering first the second ground of defence, it is plain that if the agreement is valid and binding upon the plaintiff, it absolves the defendant from liability either for breach of the contract or in tort for negligence. The liability of municipal corporations for acts done while engaged in enterprises for their own profit, although ultimately subserving a public need, is well established. *Pearl* v. *Revere*, 219 Mass. 604, and cases there collected. None of these cases, however, decide that a municipality may not by contract exempt itself from liability. In *Woods* v. *Woburn*, 220 Mass. 416, it was held that St. 1899, c. 344, which provided that eight hours should constitute a day's work for all laborers, workmen and mechanics employed by, or on behalf of a city or town in this Commonwealth that accepted the act, does not make invalid a contract of a fireman, employed by the water department of a city that had accepted the act, to work ten hours each day of the week for $16 a week. In that case it was said: "The city of Woburn owns and manages its system of water-supply as a private commercial venture. . . . It thus probably is entitled to all the protections as to inviolability of its contracts undertaken in this connection which a private individual possesses under the Fourteenth Amendment, and can invoke its shield against legislation aimed to impair their validity." The doctrine is recognized and well established by the decisions in this Commonwealth, and by courts in many other jurisdictions, that a common carrier cannot by contract be relieved from liability for its negligence. The doctrine rests upon the ground that such a contract is against public policy. *Judson* v. *Western Railroad*, 6 Allen, 486. *Cox* v. *Central Vermont Railroad*, 170 Mass. 129. *Bernard* v. *Adams Express Co.* 205 Mass. 254. *P. Garvan, Inc.* v. *New York Central & Hudson River Railroad*, 210 Mass. 275, 278. *Hart* v. *Pennsylvania Railroad*, 112 U. S. 331. This liability, recognized

by the common law, however, does not prevent a common carrier from imposing reasonable conditions limiting its liability where goods are lost or destroyed. *Bernard* v. *Adams Express Co., supra,* and cases cited. It is the contention of the plaintiff that the rule of law that a common carrier cannot by contract avoid liability for its negligence applies in principle to such contracts made by a municipal corporation. We are satisfied, however, that the absolute liability of carriers for the loss of goods transported has no application to contracts like the one in question. We see no good reason why a city or town, by its proper officers, may not make a valid contract which exempts the municipality from liability for its negligence in a case like the present. The contract in question is not opposed to public policy. The plaintiff has cited no decision of this court which holds such a contract invalid, nor are we aware of any to that effect. If there are decisions to the contrary respecting contracts like that in the case at bar, we are unable to follow them. See *Dittmar* v. *New Braunfels,* 20 Tex. Civ. App. 293.

The conclusion reached makes it unnecessary to determine whether the city, in laying the pipe, acted in its governmental capacity and for that reason is exempt from liability.

The presiding judge rightly directed a verdict for the defendant; and, in accordance with the terms of the report, judgment is to be entered for the defendant.

*So ordered.*