Nicholas V. Galluzzi *vs.* City of Beverly.

Essex.   February 4, 1941. — May 27, 1941.

Present: Field, C.J., Lummus, Qua, Cox, & Ronan, JJ.

*Municipal Corporations*, Liability for tort, Officers and agents, Sewer, Highways. *Public Officer. Negligence,* Trench. *Way,* Public: defect.

A city was liable to a landowner for negligence of employees of its sewer department in delaying for an unreasonable time restoring the macadam after digging and refilling a trench in a street while laying a sewer connection to the landowner's premises, in insufficiently tamping a portion of the trench under a sidewalk and in failing properly to restore a foundation wall of the premises, whereby in a heavy rainfall water was caused to run down the trench and to seep into the cellar of the premises; the officer in charge of the work was an agent of the city.

The entire project of laying a sewer connection in a street was work of the city's sewer department, and liability of the city for injury to an abutter arising from the project did not depend on G. L. (Ter. Ed.) c. 84, §§ 1, 15, although the injury was caused in part by a failure to restore the macadam of the street after the trench for the sewer pipe had been refilled.

Tort. Writ in the Superior Court dated January 4, 1938.

Judgment for the defendant was ordered by Williams, J. The plaintiff appealed.

*W. E. Sisk, R. L. Sisk, & W. B. Welch,* for the plaintiff, submitted a brief.

*P. Massarella,* City Solicitor, for the defendant.

Qua, J.   The plaintiff seeks to recover the sum of $600 agreed upon as the amount of damage caused to his building and his merchandise by the flooding of his cellar on October 20, 1937.

The case was referred to an auditor whose findings of fact were to be final.   The auditor's findings thus became a case stated.   They were binding upon the trial judge where not inconsistent with each other or vitiated by any error of law apparent upon the face of the report.   *Merrimac Chemical Co.* v. *Moore,* 279 Mass. 147, 152.   *Heaphy* v. *Kimball,* 293

Mass. 414, 417. *Edinburg* v. *Allen-Squire Co.* 299 Mass. 206. *Vigneault* v. *Dr. Hewson Dental Co.* 300 Mass. 223, 225. But the trial judge could draw from the facts found "any inferences of fact that might have been drawn therefrom at a trial," and we ourselves may draw such inferences. *Merrimac Chemical Co.* v. *Moore,* 279 Mass. 147, 152. G. L. (Ter. Ed.) c. 231, § 126.

The auditor found these specific facts: The plaintiff's premises were to be connected with a sewer in the adjoining street. A city ordinance provided that the city should at its own expense lay and maintain the connection from the main sewer to the line of each abutting estate. On September 15 the defendant's "Sewer Department" dug a trench in the street three feet wide and thirty-three feet long. When the cement sidewalk was reached, instead of breaking through the surface, the city dug a tunnel six feet wide beneath it to the lime bonded stone wall of the plaintiff's cellar. The entire trench and tunnel were from eight to ten feet deep. The "defendant's sewer crew" broke through the cellar wall, causing stones to fall from the wall until finally there was an opening "of approximately five (5) feet." After the sewer pipe had been laid the stones were cemented back into the plaintiff's wall, but the lime bond had been broken and the wall weakened in places other than those cemented. By September 22 the trench had been refilled and tamped, but the portion under the sidewalk had to be tamped "on a horizontal" instead of "on a vertical," and "it is not as effective to tamp on the horizontal as on the vertical." The macadam surface of the street was not restored, "in order that traffic and other conditions might have an opportunity to compact the material even more closely than was possible by the tamping." This was the usual practice, but it was also the usual practice to restore the macadam top in from one to two weeks after refilling. This was not done, and in course of time the surface of the trench became from four to six inches lower than the surface of the adjoining macadam, which was about six inches thick. The plaintiff then requested the mayor to have the street surface restored, but the

mayor informed him that the city's commissioner of public works desired to allow the filling to settle still more. The surface "should have been restored in two or three weeks," but this was not done. The plaintiff's premises were located in a low part of the city. On October 20 there was an unusual and extraordinary rainfall, causing large quantities of water to flow towards the plaintiff's premises, to enter the trench because the macadam surface had not been restored, to seep through the insufficiently tamped filling under the sidewalk, and to flow through the breaks in the wall into the plaintiff's cellar.

We think that these findings of subsidiary facts, which the court must accept, are either in themselves equivalent to a finding in terms that the defendant's negligence caused the damage or require such a finding as the only reasonable inference to be drawn from them. The auditor's general finding for the plaintiff lends further support to this view. Indeed, the defendant has scarcely argued to the contrary.

The defendant's contention is that the city is not liable because after its sewer department had filled the trench the condition of the street surface became a matter of street maintenance; that the duty of the city was merely to keep the way reasonably safe and convenient for travellers (G. L. [Ter. Ed.] c. 84, § 1); that any liability of the city for a defect in the street must rest upon G. L. (Ter. Ed.) c. 84, § 15; and that the city's commissioner of public works was not, with respect to the care of highways, an agent of the city but was a public officer for whose negligence the city is not liable to a person not a traveller. See *Kelley* v. *Boston*, 180 Mass. 233. The defendant cites, among other cases, *Kennison* v. *Beverly*, 146 Mass. 467, *Pelletier* v. *Beverly*, 292 Mass. 468, and *Ryder* v. *Taunton*, 306 Mass. 154. The defendant's argument, however, overlooks the decisive element in the case that the entire job of digging the trench, laying the connecting pipe and replacing the street surface did not appertain primarily to street maintenance, but from beginning to end was an integral part of the defendant's construction and operation of its system of sewers. *Hand* v. *Brookline*, 126 Mass. 324, 325. *Sloper* v. *Quincy*, 301 Mass. 20,

24. *Sullivan* v. *Saugus,* 305 Mass. 127, 130. It has long been settled that a municipality, which voluntarily avails itself of its power to construct and operate such a system for the benefit of abutters who pay the city through assessments, becomes liable for the negligence of those whom it employs to carry on the enterprise, who for this purpose are treated as its agents, even though the same persons may be public officers and not agents of the city with respect to other municipal functions. *Child* v. *Boston,* 4 Allen, 41, 52, 53. *Emery* v. *Lowell,* 104 Mass. 13, 15, 16, 17. *Murphy* v. *Lowell,* 124 Mass. 564. *Bates* v. *Westborough,* 151 Mass. 174, 184. *Coan* v. *Marlborough,* 164 Mass. 206. *Norton* v. *New Bedford,* 166 Mass. 48, 51. *Markiewicus* v. *Methuen,* 300 Mass. 560, 565. See *Dickinson* v. *Boston,* 188 Mass. 595, 599, 600; *Pearl* v. *Revere,* 219 Mass. 604.

It is immaterial for the purposes of this case whether "the defendant's sewer crew" did or did not exceed their powers when they broke through the plaintiff's cellar wall instead of requiring the plaintiff to do that himself. See G. L. (Ter. Ed.) c. 83, § 3.

The order for judgment for the defendant is reversed and judgment is to be entered for the plaintiff in the sum of $600.

*So ordered.*