DENNIS F. CARROLL *vs.* CAMBRIDGE ELECTRIC LIGHT
COMPANY.

SAME *vs.* CITY OF CAMBRIDGE.

Middlesex.   January 7, 1942. — August 5, 1942.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Negligence,* Electric wires, Trench, Violation of law.   *Municipal Corporations,* Liability for tort, Officers and agents.   *Public Officer.   Way,* Public: electric wires.   *License.   Proximate Cause.*

The board of aldermen of a city, in granting a permit for the installation of an underground conduit for electric wires in a public way pursuant to an ordinance requiring such a permit, were public officers and the city would not be liable for their failure to see that the conduit was laid in the location specified in the permit; and a provision of the permit that the "exact location" of the conduit should be supervised and approved by two designated city officials did no more than make such officials agents of the board in that respect.

Negligence, rendering a city liable for injuries received by a workman when a drill operated by him in a trench dug in the course of construction of a sewer for the city struck a conduit containing wires of an electric company which had been laid in a location several feet distant from that specified in a permit for its laying, was not shown where there was no evidence that anyone for whose acts the city was responsible knew or should have known of the actual location of the conduit or that the place where the workman was drilling was a place of danger because of its presence.

The installation by an electric company of an underground conduit containing wires in a public way in a location different from that specified in a permit granted by the board of aldermen of the city in accordance with an ordinance forbidding such an installation except upon a permit by the board in which the "exact location" should be set forth was a violation of the ordinance and evidence of negligence of the company toward one injured as a proximate result of the violation.

Negligence of an electric company in laying an underground conduit containing wires in a public way in a location several feet distant from that shown on a plan referred to in a permit for the installation granted in accordance with a municipal ordinance could be found to be the proximate cause of injury sustained many years later by a workman when, while in a trench dug in the course of constructing a sewer, in connection with which use was made of such plan, a drill operated by him struck the conduit.

A provision of a permit by a city board to lay an underground conduit in a location shown on a certain plan, that the "exact location" should be "under the direction and to the satisfaction of" and "approved by" two designated city officials, meant only that those officials were to see that the conduit was laid in the exact location granted, and their approval of another location in which the conduit was in fact laid would not show that the company had complied with the permit.

Two ACTIONS OF TORT. Writs in the Superior Court dated May 25, 1938, and November 1, 1940, respectively.

The actions were tried before *Goldberg*, J.

*H. Lawler*, for the plaintiff.

*R. J. Lavelle*, for Cambridge Electric Light Company.

*J. H. Smith*, Assistant City Solicitor, for the city of Cambridge.

DOLAN, J. These are two actions of tort in which the plaintiff seeks to recover compensation for personal injuries alleged to have been caused by the negligence of the respective defendants. At the close of the plaintiff's evidence each of the defendants filed a motion for a directed verdict in its favor and in each case the motion was allowed, subject to the plaintiff's exceptions.

The evidence would have warranted the jury in finding the following facts: On May 19, 1938, the plaintiff was employed by the Works Progress Administration (hereinafter referred to as the W. P. A.) in assisting in removing an old sewer at the intersection of Norfolk and Austin streets, in Cambridge, and in the construction of a new sewer. He was operating an electric drill known as a "jack hammer" and while drilling in a trench, standing ankle deep in water, the drill struck a conduit containing electric wires, owned and maintained by the defendant electric light company. An explosion ensued and the plaintiff was injured. No one had told him of the existence of any electric wires at the place of the accident, or warned him of any danger.

The work was being done by the W. P. A. for the city, and its superintendent of sewers testified that he was on the job two or three times a day; that it was his duty "to see that they had equipment and materials, and if there was any question whether or not the work was being carried on right . . . [he] would instruct . . . [his] supervisors and foremen on the job"; that he had nothing to do with the W. P. A. men; that he had supervision of the work and gave instructions to his foremen on the job; and that they were supposed to instruct the W. P. A. supervisors. The assistant city engineer went to the location frequently in connection with his duties as an employee of the city. He identified certain blue prints of plans, some of which were filed in the city engineer's office when the company received a permit to lay a conduit near the place where it had actually been constructed subsequently. These plans were filed in accordance with an ordinance of the city (c. 14, § 15), which provided that no conduits should be laid "except by order of the board of aldermen previously obtained, in which the exact location of each [conduit] shall be duly set forth." The order of the board of aldermen specified that the conduit was to be located in accordance with the plans to which reference has just been made. Those plans, which, so far as the record discloses, were the only plans available to the city at the time of the accident, show the grant of location of the conduit to have been at a place about twenty feet

distant from the northeast corner of Norfolk and Austin streets, and at a point about eight feet distant from the place where the conduit had actually been laid by the defendant electric light company, and where the plaintiff was working when injured. The conduit was not laid in the location granted, but was built at a different location shown on a plan dated 1940 which was prepared by the electric light company. The order granting the location provided that "The kind and quality of material used in the construction of said duct or conduits, and exact locations shall be under the direction and to the satisfaction of the City Engineer and the Superintendent of Streets, and shall be approved by them."

It is unnecessary to recite the principles of law governing the liability of municipalities for negligence in the construction and operation of sewer systems, concerning which reference may be had to *Galluzzi* v. *Beverly,* 309 Mass. 135, 137, 138, and cases cited, or to determine the exact relationship existing between the plaintiff and the city at the time of the accident, — see, however, *Towner* v. *Melrose,* 305 Mass. 165, 168, 169, — since, even though it be assumed for the purpose of the case against the city that it would be liable if the plaintiff's injuries were caused by its negligence, we are of opinion that the evidence would not warrant a finding that his injuries were so caused.

There is no evidence in the present cases that the city had any knowledge or properly should have had knowledge of the actual location of the conduit through anyone for whose acts it would be responsible. Consulting the plans filed when the location was granted in 1907, the actual location of the conduit would not have been discovered, and the sewer department through its superintendent would have been warranted in assuming that the conduit was located as shown on those plans. No duty rested upon the defendant city to take precautions to guard against dangers of which it could not be charged with knowledge. The evidence would not warrant a finding that the city knew or should have known that the place where the plaintiff was working when injured was a place of danger or risks other

than those incidental to his employment.  See *Cotoia* v. *Seale*, 306 Mass. 101, 103, and cases cited.  *Keough* v. *E. M. Loew's, Inc.* 303 Mass. 364, 365.  The plaintiff has argued, however, that there was a duty upon the officials of the city to see that the conduit was laid in the location granted. In granting the location for the conduit in 1907 the city's board of aldermen acted not as its representative but as an independent board on behalf of the Commonwealth, G. L. (Ter. Ed.) c. 166, § 22, *Lynch* v. *Lowell Electric Light Corp.* 263 Mass. 81, 86, and the city is not liable for any injuries resulting from the failure of the electric light company to lay the conduit in the location granted, nor from any failure of any city officials to see that the conduit was so constructed.  No duty in the matter is imposed by law other than upon the board of aldermen of the city, and the direction in the order granting the location that the "kind and quality of material used in the construction of said duct or conduits, and exact locations shall be under the direction and to the satisfaction of the City Engineer and the Superintendent of Streets, and shall be approved by them," did no more than make them agents of the board of aldermen in the matter for whose acts the city is not liable.  *Flood* v. *Leahy*, 183 Mass. 232, 236.  *Cheney* v. *Barker*, 198 Mass. 356, 364.  *Metropolitan Home Telephone Co.* v. *Emerson*, 202 Mass. 402, 405.  *Sweeney* v. *Boston*, 309 Mass. 106, 110, and cases cited.  *Reitano* v. *Haverhill*, 309 Mass. 118, 122, 123.  See *Daddario* v. *Pittsfield*, 301 Mass. 552, 558, 559.  There was no error in granting the city's motion for a directed verdict.

We now consider the case against the defendant electric light company (hereinafter referred to as the defendant). The declaration is based upon allegations of negligence on its part in failing to exercise care in the maintenance of the wires laid below the surface of the streets involved, in failing to take precautions to prevent the plaintiff from being injured and to give him due and sufficient warning of the existence of the wires, and in failing properly to insulate them.  There is no allegation of nuisance in the declaration.  It is not alleged that the conduit was located in a

place other than that authorized by the board of aldermen of the city, and the facts alleged cannot be said to be such as to afford the defendant sufficient information, so far as nuisance is concerned, to enable it to plead to the declaration intelligently and directly. The declaration does not "state concisely and with substantial certainty the substantive facts necessary to constitute . . . [a] cause of action [for nuisance]." G. L. (Ter. Ed.) c. 231, § 7, Second. *Grandchamp* v. *Costello*, 289 Mass. 506, 507, and cases cited. When the case was argued before us a motion was filed by the plaintiff that he be permitted to amend his declaration by alleging that the conduit was a nuisance since it was not laid in the location set out in the plans filed with the proper officials of the city in accordance with the order of the board of aldermen. We think that this motion should be denied.

The question remains whether in the aspect of the case most favorable to the plaintiff, which has already been set forth, the jury would have been warranted in finding that the plaintiff's injuries were due to the negligence of the defendant. No contention has been made that it could have been ruled properly that the plaintiff was guilty of contributory negligence.

Apart from the fact that the conduit was not laid in the location granted by the board of aldermen there is no evidence of negligence on the part of the defendant. Chapter 14, § 15, of the city ordinances of Cambridge provides that "No person or corporation shall construct, erect, lay or maintain in any public way, any pole, duct, conduit, manhole or other structure to support or contain wires or lines for the transmission of intelligence by electricity or otherwise or for the purpose of light, heat and power, except by order of the board of aldermen previously obtained, in which the exact location of each shall be duly set forth." See also G. L. (Ter. Ed.) c. 166, §§ 21–27. The jury could find properly that the conduit in question had not been laid in the location granted, in violation of the provisions of the ordinance before referred to. That violation of the ordinance was some evidence of negligence, but negligence "consisting in

whole or in part of violation of law, like other negligence, is without legal consequence unless it is a contributing cause of the injury." *Baggs* v. *Hirschfield*, 293 Mass. 1, 3, and cases cited. *Fulton* v. *Edison Electric Illuminating Co.* 303 Mass. 258, 267. "Ordinarily causation is a question of fact, though it may become a question of law when all the facts are established and there can be no reasonable difference of opinion as to the effect of them." *McKenna* v. *Andreassi*, 292 Mass. 213, 217. While the injury must be the direct result of the wrongful act the cause "will not be considered too remote if, according to human experience, the defendant ought to have foreseen that the intervening act was likely to happen. . . . It is sufficient if it appears that the negligent act of the defendant would probably cause harm to another, even though the precise manner in which it occurred could not have been foreseen." *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 517, and cases cited. In the case just cited the court said that "A violation of . . . [an] ordinance . . . although not conclusive, is evidence of negligence on the part of a violator as to all consequences that the . . . ordinance . . . was intended to prevent." (Page 516.)

It is recognized that a municipality has a certain corporate interest in the granting of locations for the laying of conduits or pipes beneath the surface of its streets for transmission of electricity and for other purposes, such as the supplying of water, gas or steam. The expense of keeping streets in repair, a duty imposed upon the municipality, may be involved. (See *Flood* v. *Leahy*, 183 Mass. 232, 236.) It is common knowledge that from time to time many municipalities are obliged to open streets for purposes connected with the maintenance of water and sewer systems. Manifestly it is of the utmost importance that the location of conduits of public service corporations or others should be specifically fixed, as required in the present case by the pertinent ordinance, and that the location granted be exactly adhered to in order that duties imposed upon or undertaken by the municipality under lawful authority may be prosecuted with safety to the community. The defend-

ant, stressing the direction in the order of the board of aldermen granting the permit for the location that the "kind and quality of material used in the construction of . . . [the] duct or conduits, and exact locations shall be under the direction and to the satisfaction of the City Engineer and the Superintendent of Streets, and shall be approved by them," has argued that the location in which the conduit was in fact laid must be taken to have been approved by these officials, and hence that the order of the board of aldermen was complied with. We do not accede to this argument. The order of the board of aldermen specified that the conduit should be located in accordance with the plans which had been filed by the defendant, and we interpret the authority confided to the city engineer and the superintendent of streets with respect to "exact locations" to mean no more than that they should see that the ducts or conduits were laid in the exact locations granted.

The work being done for the city consisted in the construction of a new sewer and the removal of preëxisting sewer connections. The plans showing the location granted to the defendant for laying a conduit were in evidence in the form of blue prints. They were produced by the assistant city engineer from the files of the city engineer. They showed a location, not where the conduit was actually laid, but, as before pointed out, at least eight feet distant therefrom. The assistant engineer was frequently upon the location where the sewer work was being done. He identified certain plans filed when the location for the conduit was granted. They were marked as exhibits and appear in the form of blue prints and we think that his reference to plans was to blue prints of the plans. On all the evidence we think that the jury could find that these blue prints of the plans were in use when the sewer work was being done. We also think that the jury could have found properly that had the conduit been located as fixed by the plans filed by the defendant and as authorized when the location was granted, the accident would not have happened, that according to human experience the defendant ought to have foreseen that its action would probably cause harm to

others, that it was negligent in failing to locate the conduit in accordance with the plan, and that such negligence remained a culpable and direct cause of the plaintiff's injury. *Leahy* v. *Standard Oil Co. of New York,* 224 Mass. 352, 362. We are of opinion that the question, whether the defendant's negligence in violating the ordinance by laying its conduit in a location other than the one granted was a contributory cause of the plaintiff's injury, was a question of fact for the jury.

In the case against the defendant city the plaintiff's exception to the allowance of the defendant's motion for a directed verdict is overruled. In the case against the defendant Cambridge Electric Light Company the plaintiff's exception to the allowance of the defendant's motion for a directed verdict is sustained.

*So ordered.*