Roberts, J.
This is an action of tort for negligence in which the plaintiff seeks to recover damages resulting from the escape of large quantities of water on to its premises, following a separation or break at the junction of a lateral supply pipe, connected with a water main used for commercial purposes, and the base or pot of a fire hydrant, all of which were maintained by the defendant city.
The trial court ruled that there was no evidence to warrant a finding that the defendant was negligent in the maintenance of the lateral pipe and fire hydrant but found as a fact that the defendant was negligent after the break in failing to control the escape of water within a reasonable time.
The plaintiff’s declaration as material is as follows:
“Count 2. And the Plaintiff says that on or about May 7, 1948, it was a lessee of a store and basement located at *204 1134 Blue Hill Avenue, in the Dorchester District of Boston where it operated a retail drug business; that the Defendant, through its Water Department, constructed, maintained and operated a water supply system which as a part thereof supplied water to a water hydrant, which water hydrant was located in or upon the sidewalk at or near the front of the Plaintiff’s premises; that the Defendant caused water to be supplied to said water hydrant from and through a certain water main which main also supplied water to commercial users thereof and for which water the Defendant received income from those making use of said water; that said enterprise was commercial in character; that on or about said May 7th, 1948, said water hydrant became disengaged from the lateral pipe which supplied water to the said hydrant from the said water main thereby causing great quantities of water to escape therefrom and that after due and timely notice of the escape of said water, the Defendant through its servants and agents, negligently and wrongfully and without just cause permitted said water to continue to escape in large quantities for an unreasonable period of time; that as a result of which the Plaintiff sustained substantial damage.”
The answer is a general denial. At the trial there was evidence tending to show that the plaintiff operated a drugstore in a one story and basement structure on the southeast corner of Blue Hill Avenue and Woodrow Avenue in the Dorchester section of Boston and that there was a basement window on the Blue Hill Avenue side of the store some 6-7 inches above the level of the sidewalk. Contiguous to the plaintiff’s premises and on its south side (Blue Hill Avenue) was another store operated as a bakery which also occupied a one story and basement structure.
A public sidewalk on Blue Hill Avenue in front of these two stores measured 14 feet in width from the building line *205 to the curbstone and underneath this sidewalk and parallel to each building line ran a water main 16 inches in diameter. This water main was installed and maintained by the defendant for the purpose of furnishing these stores and others with water for commercial use. In addition the main furnished a supply of water for five hydrants in the general area.
Such a hydrant was located by the defendant directly in front of the premises of the bakery on Blue Hill Avenue at a point some 15 inches from the curbstone and the defendant had installed and connected a 6 inch pipe running laterally from the aforementioned main to this fire hydrant. The lateral pipe was some 8 feet in length and ran at a right angle underneath the sidewalk and in front of the bakery. It had no other outlets or connections and prior to the break served the sole and exclusive function of supplying the hydrant with water for fire purposes. The hydrant was full of water but was not in use at the time of the severance.
About 1:00 A. M., on May 7, 1948, the lateral pipe in -question became separated or broke away from the fire hydrant at the base or pot of the hydrant and threw a geyser of water eight or ten feet high into the air. The plaintiff’s premises and the area for some distance around were flooded. For a period of some three hours water was in the Cole Drug basement until the water in the main was shut off about 4:00 A. M., on the same morning. The maximum height of the water in the Cole Drug was from 38 to 40 inches from the basement floor. There was 13 inches of water in the plaintiff’s basement at 2:00 A. M.
There was evidence tending to show that the city sent two emergency trucks with crews to the scene. The first emergency truck which arrived at 1:30 A. M., had a crew of two men. One stayed with the truck while the other probed for a shut-off for one-half hour in the wrong area. *206 At about 2-2:15 A. M., the operator of the truck used the radio telephone. A second emergency truck arrived at 3:00 A. M., with a similar crew of two men. The employees of the emergency trucks did not consult or use any charts to locate any shut-off gates until 3:00 A. M., when one Ryan, a division foreman, arrived with charts. Public Works Department regulations required the presence of charts showing the location of shut-off gates on emergency trucks. When one of the city employees was directed to a shut-off base he shrugged off this advice. In the interim period between 2:15 and 3:00 A. M., at the conclusion of which the second emergency truck arrived, the employees of the first emergency truck merely stayed in the truck. All men on both trucks had rubber boots except the driver of the first truck.
There were four shut-off gates in the vicinity of the break which controlled the water in the 16-inch main and another such gate was located in the 6-inch lateral pipe within three feet of the instant hydrant. The entire operation of shutting off the water should have taken about 35 minutes with six men, and if four men were used, it should take only 50 minutes.
At the close of the trial the defendant filed requests for rulings of law. These requests and the disposition which the court made of them, together with a “Memo” appended to the defendant’s requests for rulings are as follows:
(1) The defendant municipality is not liable for the mere bursting of a water pipe. Bigelow, Kennard & Co. v. Boston, 254 Mass. 53. Granted* (2) Res Ipsa Loquitur does not apply to the bursting of a water pipe. Goldman v. Boston, 274 Mass. 329. Granted. (3) The defendant municipality is exempt from liability when injury results from the negligent perform *207 anee of a governmental duty. Granted. (4) A fire hydrant is not part of the water system of the defendant municipality but is a governmental structure and as such is a governmental structure exclusively constructed and maintained for a governmental purpose. Granted. (5) A fire hydrant together with a lateral pipe from the main which is used exclusively to supply said fire hydrant with water from the main for fire purposes is a structure used for a governmental purpose and the defendant city is not liable for any negligence in connection with said fire hydrant and lateral pipe. Granted insofar as fire hydrant and lateral pipe alone are concerned, but inapplicable after initial accident to any unreasonable delay in remedying danger created. (6) The plaintiff may recover only if the defendant is found to be negligent and the defendant was using this fire hydrant for its own private advantage and emolument as a commercial enterprise. Denied. See (5). (7) “Cities and towns are . . . authorized by general laws to provide and maintain fire engines, reservoirs, and hydrants to supply water for the extinguishment of fires.” Tainter v. Worcester, 123 Mass. 311. Granted. (8) “The great weight of authority is to the effect that hydrants and apparatus for the extinguishment of a fire in a municipality are in their nature public, or governmental property, and that negligence in their use and maintenance for a public purpose no action will lie.” Morgan v. Village of Stowe, 104 Atlantic Reporter, 339, 343. Granted. (9) The evidence does not warrant a finding for the plaintiff. Denied. (10) There is no evidence to warrant a finding for the plaintiff. Denied. (11) There is no evidence to warrant a finding that the defendant was negligent in the maintenance and use or upkeep of this fire hydrant and lateral pipe. Granted. I find on the facts however that after danger was created by the rush of water from the area of the hydrant the defendant was negligent in failing to remove the cause of the danger within a reasonable time. (12) There is no credible evidence sufficient to warrant a finding that the defendant was negligent in failing to control the water after the break. Denied. (13) The defendant can be liable for only the damage which reasonably and necessarily flows from its negligence, if any. Granted.
*208 Memo. I find on the facts that after the water came from the area where the fire hydrant had become loose from the lateral pipe line the area about the hydrant became flooded with an excessive amount of water due to the delay of the defendant to remedy the flow of water within a reasonable length of time.
Upon all the evidence the court found for the plaintiff in the sum of $5,075.04 the damages having been limited to such damage as occurred after the time in which the water should have been shut off by the defendant in accordance with the court’s specific finding of fact contained in the court’s “Memo of Findings.” The sole issue presented by the defendant is whether it is liable for the negligent conduct of the employees of its water department when they failed within a reasonable length of time to stop the escape of large quantities of water from a break in a lateral supply pipe connecting a water main, used for commercial purposes, with a fire hydrant.
No question has been raised as to the finding by the trial court that the failure by such employees to locate and close shut-off gates provided in the immediate area within a reasonable time constituted negligent conduct nor is it urged that they were not acting within the scope of their employment. On the contrary the argument is made that such conduct constitutes negligent maintenance of a fire hydrant and its equipment in that said break occurred at the junction of the lateral pipe and the base or pot of said hydrant, and the defendant municipality contends that it is not answerable for this.
While it is clear that a municipality is not liable for negligence in the conduct of strictly public functions from the performance of which it receives no profit or advantage, Galassi Mosaic Tile Co. v. City of Boston, 295 Mass. 544, 551, it is equally clear that the defendant city would be an *209 swerable for negligence in the conduct of a commercial enterprise voluntarily undertaken for profit or to benefit corporation interest, although a public need is ultimately subserved. Hill v. Boston, 122 Mass. 344; Orlando v. Brockton, 295 Mass. 205, 208; Baumgardner v. Boston, 304 Mass. 100; Galluszi v. Beverly, 309 Mass. 135.
In the undertaking to supply water at a price, it has been repeatedly held that a municipality is engaging in trade and not performing a governmental function and is liable for negligence in laying out its pipes and keeping them in repair. Hand v. Brookline, 126 Mass. 324; Lynch v. Springfield, 174 Mass. 430; Pearl v. Revere, 219 Mass. 604; Lucas v. Boston, 313 Mass. 495.
In the case at bar the court ruled at the request of the defendant that it was not answerable for the original break or severance but found the employees of the water department were negligent in failing to control the escape of water from the break within a reasonable length of time. But the defendant contends that since a municipality maintains a fire department as a public function, Abihider v. Springfield, 277 Mass. 125, and is not responsible for the negligence of its public officers, Gregoire v. Lowell, 253 Mass. 119, it should not be responsible for repair or maintenance of fire hydrants. Morgan v. Village of Stowe, 92 Vermont 338.
In our opinion this argument has no application to the case at bar. The undisputed evidence here is that the break occurred not in the hydrant itself but in its connection with the lateral supply pipe. While we may assume that ordinary maintenance of the hydrant was governmental in nature, there was no evidence offered by the defendant indicating that the obligation to repair the break and stop the flow of water from the water main was chargeable to the fire department or other public officers or that the *210 water department employees at the time of their negligence were in fact engaged in a strictly public function. Welch v. Rutland, 56 Vermont 228.
To the contrary there is evidence that the character of the repairs Undertaken after the break was clearly an incident of the conduct of the water system. Obviously a break at either end of the lateral resulting in the escape of large quantities of water would impair the normal flow of water through the water main which was indisputably commercial in character. Kelly v. Winthrop, 219 Mass. 471; Harvard Furniture, Inc. v. Cambridge, 320 Mass. 227; Sloper v. Quincy, 301 Mass. 20; Watson v. Needham, 161 Mass. 404. The defendant’s argument overlooks the decisive element in the case that the entire work of stopping the escape of large quantities of water under pressure from its water system did not appertain primarily to ordinary repairs or maintenance of the fire hydrant or the lateral pipe, but was basically related to the maintenance of its water supply system. We are of the opinion that the evidence clearly demonstrates that after the break or severance and at the time of their negligence the defendant employees were acting within the scope of their employment and in the course of a commercial venture of the city and not performing a governmental function. Stock v. Boston, 149 Mass. 410; Murray v. Boston, 219 Mass. 501; Sullivan v. Saugus, 305 Mass. 127.
The employees were found to have been negligent in their failure to stop the escape of water within a reasonable length of time to the damage of the plaintiff and on the evidence we believe there was no error in the court’s rulings and that the finding should stand.
Report dismissed.

 The trial court’s ruling and findings on each of the defendant’s Requests for Rulings are printed in italics following the request.